JOHN H. RICHARDSON, Appellant, *v.* JOSHUA DRAPER et al.,
     Assignees, etc., Appellants; certain Creditors of Assignors,
     Respondents.

The U. S. S. Co., a corporation organized in this State, of which one W.
     was one of the principal promoters and organizers, and a large stock-
     holder, proposed to the citizens of Sandusky, Ohio, that it would erect

a rolling mill at that place, if they would donate the real estate and loan to it $150,000 upon its bonds, secured by the guaranty of W. and other stockholders. The proposition was accepted and complied with, and W., with the other designated stockholders, executed a joint guaranty of the payment of the bonds. The company and the guarantors, including W., thereafter became insolvent, and the latter executed a general assignment for the benefit of creditors, and subsequently died before the bonds fell due. In an action brought to compel an accounting on the part of the assignees of W., and a distribution of the fund in their hands, *held*, that the liability upon the guaranty was not extinguished by his death ; that the guarantors did not act as mere sureties, but secured an individual benefit, and were under a moral obligation to pay ; and so that there was a just foundation for a court of equity to intervene and save the obligation of the guaranty, and, therefore, that the holders of the bonds were entitled to share *pro rata* with the other creditors in the assigned estate.

The death of a joint obligor only discharges his obligation in a case where it appears that he was a mere surety, who received no benefit whatever from the joint obligation.

(Argued November 23, 1882 ; decided January 17, 1882.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 14, 1880, which affirmed a judgment, entered upon a decision of the court at Special Term. (Reported below, 23 Hun, 188.)

The nature of the action and the material facts are set forth in the opinion.

*S. W. Fullerton* for appellants. The guarantors had the right to prescribe the terms upon which they would make the guaranty, and the right to dictate the form of the instrument they would sign. (*Barnes* v. *Barrows*, 61 N. Y. 39.) The effect, therefore, of Mr. Wheeler's death was to discharge his estate both in law and in equity from all liability on the guaranty. The remaining surviving guarantors only were liable. (*Getty* v. *Binsse*, 49 N. Y. 385; *Wood* v. *Fisk*, 63 id. 245 ; *Risley* v. *Brown*, 67 id. 160 ; *Hawk* v. *Craighead*, id. 432 ; *Hulbert* v. *Fergurson*, 40 How. 478 ; *U. S.* v. *Price*, 9 How. [U. S.] 90.) It cannot be said that the assignment by Wheeler was any authority to the assignees to pay the bonds guaranteed, unless

at the time they matured there was such a condition of things
as would make the estate liable to pay them.        (*Beach* v. *Ful-
ton Bank*, 3 Wend. 573 ; *Pratt* v. *Adams*, 7 Paige, 615 ;
*Green* v. *Morse*, 4 Barb. 332.)   Section 758 of the Civil Code,
as it was not a law when Mr. Wheeler died, did not give the
claimants relief.   (*Randall* v. *Sackett*, 77 N. Y. 480.)

*James L. Bishop* for respondents.   If the effect of the guar-
anty is to be determined by the law of the State of New York,
Mr. Wheeler's liability upon the guaranty was not discharged
by his death.   (Code of Civil Procedure, § 758 ; *Town of Du-
anesburgh* v. *Jenkins*, 57 N. Y. 177 ; *Homer* v. *Lyman*, 2
Abb. Ct. of App. Dec. 399 ; Cooley's Const. Lim. 381 ;
*Southwick* v. *Southwick*, 49 N.Y. 5 ), 517 ; *In re Palmer*, 40 id.
561 ; *Curtis* v. *Leavitt*, 15 id. 9 ; *Walldemeyer* v. *Westover*,
14 id. 16 ; *Van Rensselaer* v. *Schuyler*, 13 id. 299 ; *Conkey* v.
*Hart*, 20 id. 222 ; *Syracuse Bk.* v. *Davis*, 16 Barb. 188 ;
*Forbes* v. *Halsey*, 26 N. Y. 53 ; *Pells* v. *Supervisors*, 65 id.
300 ; *Ex parte Kimball*, 17 Ves. 525 ; *Miller* v. *Reed*, 27
Penn. St. 244, 248 ; *Corning* v. *McCulloch*, 1 N. Y. 47, 60 ;
Brandt on Suretyship, § 248 ; *Wood* v. *Leland*, 22 Pick. 505 ;
1 Pars. on Cont. 32, note ; *Bradley* v. *Burwell*, 3 Denio, 61 ;
*Johnston* v. *Harvey*, 12 W'kly Dig. 29 ; *Satterlee* v. *Matthew-
son*, 2 Pet. 406 ; *Welsh* v. *Wadsworth*, 30 Conn. 149 ; *Curtis*
v. *Leavitt*, 15 N. Y. 9 ; Cooley's Const. Lim. 375, note.)   Mr.
Wheeler was not a mere or naked surety.   (*Bradley* v.
*Burwell*, 3 Denio, 61 ; *U. S.* v. *Price*, 9 How. [U. S.] 90 ;
*Hunt* v. *Rousmanier*, 8 Wheat. 214 ; *Hyde* v. *Turner*, 1 Barb.
84 ; *Morehouse* v. *Ballou*, 16 id. 269, 291 ; *Pryor* v. *Wil-
liams*, 3 Abb. Ct. of App. Dec. 626 ; 1 Story's Eq. 162.)   Mr.
Wheeler and those claiming under him are estopped from de-
nying that he was liable on the bonds, as a stockholder of the
Nes Silicon Steel Company.   (*Hall* v. *Luther*, 13 Wend. 491 ;
*Freeman* v. *Auld*, 44 N. Y. 50 ; *Boynton* v. *Andrews*, 63 id.
93.)   If Mr. Wheeler was not a mere surety, then the remain-
ing co-obligors being insolvent, his estate is liable.   (*Pope* v.
*Cole*, 55 N. Y. 124 ; *Harris* v. *Hollister*, 64 id. 1 ; *Riper* v.
*Poppenheusen*, 43 id. 68 ; *Devine* v. *Duncan*, 52 How. Pr.

446; *Voorhis* v. *Childs*, 17 N. Y. 357.) Though the contract be joint in form, equity will regard it as joint and several, on the ground of mistake. (*Root's Ex'r* v. *Wright*, 12 Rep. 438; *S. C.*, 21 Hun, 344; *Bawn* v. *Frisbie*, 80 N. Y. 394; *Rogers* v. *Lyon*, 64 Barb. 373; Code of Civil Procedure, § 835; *Hyde* v. *Turner*, 1 Barb. 84; *Morehouse* v. *Ballou*, 16 id. 269–291; *Pryor* v. *Williams*, 3 Abb. Ct. of App. Dec. 626; 1 Story's Eq. 162; 1 Phil. on Ev. 526; 1 Greenl. on Ev., § 187; *Hatch* v. *Elkins*, 65 N. Y. 489.) The guaranty is in terms several. (De Collyer on Guaranties, 213; *Remsen* v. *Graves*, 41 N. Y. 471, 477; 1 Story on Contracts, 60; *Warner* v. *Ross*, 9 Abb. N. C. 385; *Ludlow* v. *McCrea*, 1 Wend. 228–231; *Sandford* v. *Halsey*, 2 Denio, 235–264; 2 Daniels on Negotiable Instruments, 639; 1 Story on Contracts [5th ed.], 47; 1 Parsons on Contracts [5th ed.], 11; *Yorks* v. *Peck*, 14 Barb. 644; *Morange* v. *Mudge*, 6 Abb. 243; *Crist* v. *Burlingame*, 62 Barb. 351.) The words of the guaranty are to be taken as strongly against the party giving the guaranty as the sense of them will admit. (Fell on Guaranty [3d Am. ed.], 118; *Gates* v. *McKee*, 13 N. Y. 232; *Rindge* v. *Judson*, 24 id. 65; De Collyer on Guaranties [Am. ed., 1875], 212; 2 Daniels on Negotiable Instruments, 639.) The general assignment executed by Mr. Wheeler was an appropriation of his property to the payment of this debt, and amounted in law to a payment *pro tanto* at the date of the delivery of the assignment. (*Terry* v. *Butler*, 43 Barb. 395–398; *In re Oakley*, 1 Ins. Rep. 56; *Murray* v. *Judson*, 9 N. Y. 73; Burrill on Assignments [3d ed.], § 12; *Pratt* v. *Adams*, 7 Paige, 615; *Green* v. *Morse*, 4 Barb. 332; *Jewett* v. *Woodward*, 1 Edw. Ch. 195; *Maynard* v. *Maynard*, 4 id. 711; *Matter of Lewis*, 81 N. Y. 421; *Murray* v. *Judson*, 9 id. 73; *Livermore* v. *Northrup*, 44 id. 107; *Brainard* v. *Dunning*, 30 id. 211; *Griffin* v. *Marquardt*, 21 id. 121; *Loeschigk* v. *Jacobson*, 26 How. Pr. 526; *Smith* v. *Tighe*, 46 Supr. Ct. 270.)

EARL, J. In 1874 Elisha P. Wheeler executed to the defendants a general assignment of all his property, without

preferences, for the benefit of all his creditors.   The assignees accepted the trust and took possession of the assigned property; and after they had converted it into money, and were ready for the distribution among the creditors of the assignor, the plaintiff, one of the creditors of the assignor, on his own behalf and on behalf of all the other creditors, who were very numerous, commenced this action against the defendants for a settlement of their accounts, and a distribution of the money in their hands as such assignees among those entitled to share therein. A referee was appointed to take and state the account of the defendants, and to ascertain and determine the creditors of the assignor, and the amounts due them respectively; and he was ordered to report his conclusions, and the evidence taken by him to the court.   He subsequently received the evidence of all the parties who appeared before him, determined the amount of money in the hands of the defendants for distribution, and the creditors whom he held to be entitled to share therein.   The respondents appeared before him claiming to be creditors of the assignor, and made proof of their respective claims, but he determined that they were not creditors, and not entitled to share in the distribution.   They filed exceptions to the report of the referee, which, upon the hearing at Special Term, were sustained, and judgment was there entered adjudicating that they were creditors of the assignor entitled to share *pro rata* with the other creditors in the fund to be distributed.   From the judgment thus entered, the plaintiff and defendants appealed to the General Term, where the judgment was affirmed, and then they appealed to this court. The sole question for our determination upon the merits on this appeal is, whether the court below decided correctly in holding that the respondents were entitled to share in the fund to be distributed. At the General Term a motion was made by the respondents to dismiss the appeal on the part of the defendants, the assignees, on the ground that they were not aggrieved by the judgment appealed from, and hence had no right to bring the appeal. That motion was denied, and from the order entered denying the same, the respondents appealed to this

court. Upon the argument of the appeal before us, the respondents moved also to dismiss the plaintiff's appeal on the ground that the amount in controversy as to him was less than $500. The questions raised as to the right of the plaintiff and of the defendants to appeal are not free from some difficulty, and as we have concluded that the judgment upon the merits is right, we do not deem it important to determine these questions, and we, therefore, *pro forma* deny the motion to dismiss plaintiff's appeal and affirm the order refusing to dismiss defendants' appeal.

The facts bearing upon the determination now to be made are as follows: In June, 1872, the Nes Silicon Steel Company was incorporated in this State, and Wheeler, the assignor, and the other persons who executed the guaranty hereinafter mentioned, were the principal promoters and organizers of the corporation. The capital stock of the company in the articles of association was fixed at $6,000,000, divided into 60,000 shares of $100 each, and the whole of it was issued to certain persons for patents, real estate and other property. Soon thereafter the company desiring to erect a rolling-mill at Sandusky in Ohio, and having no cash capital for that purpose, proposed to the citizens of Sandusky, that it would erect the rolling-mill at that place if the citizens there would procure and donate to it the requisite real estate and loan to it $150,000 upon the bonds of the company, to be secured by a mortgage upon such real estate, and by the guaranty of Wheeler and other stockholders of the company. The proposition was accepted by such citizens, and they donated to the company the real estate required, and then the company, in October, 1872, executed its mortgage to a trustee to secure bonds to the amount of $150,000, and executed the bonds with interest coupons attached, and Wheeler and ten other stockholders of the company executed the following guaranty:

" The Nes Silicon Steel Company, an incorporation duly organized under the laws of the State of New York, located at Rome, Oneida county, New York, having negotiated with Lester S. Hubbard, of the city of Sandusky, Ohio, and others for

a loan of $150,000, to be secured by the bonds of said company, issued at Rome, aforesaid, payable to the said Lester S. Hubbard or bearer, on the 1st day of January, 1878, with interest at the rate of ten per cent per annum, payable semi-annually, for which interest coupons are to be attached to said bonds, the payment of which bonds are to be secured by a mortgage of ten acres of real estate of said company, situated in Sandusky, aforesaid, to said Lester S. Hubbard as trustee for the holders of said bonds, and which loan was agreed to be made upon condition that the undersigned should personally guaranty, in writing, the payment of said bonds, both principal and interest, and should deposit with said trustee such guaranty for the benefit of said bondholders.

Now, therefore, in consideration of the premises, and of $1 to the undersigned, and each of us, paid by Lester S. Hubbard and said bondholders, and each of them, and for the purpose of carrying into effect the agreement for said loan and the condition upon which the same was to be made, we, the undersigned, hereby covenant and agree, to and with said Lester S. Hubbard and said bondholders, to, and do hereby, guaranty the payment of said loan, both principal and interest, and of said bonds and each of them, both principal and interest, and of the coupons and each of them, attached to said bonds and each of them."

The mortgage, bonds and guaranty were delivered to the trustee and by him the bonds were delivered to citizens of Sandusky, who severally advanced to the company the $150,000, and the respondents are the persons holding the bonds thus issued, and they claim to be creditors of the assignor and to share in the assigned estate by virtue of such bonds and the guaranty thereof.

At the time of executing such guaranty Wheeler was one of the trustees of the company and owned two thousand shares of its capital stock, of the par value of $200,000 ; and he and the other guarantors owned nearly all the capital stock, to-wit : Fifty-four thousand three hundred and forty of the sixty thousand shares.    Afterward, the company and all the guar-

antors became insolvent, and Wheeler died in March, 1876, before the bonds became due, which was January 1, 1878.

The sole ground upon which the appellants deny the right of the respondents to share in the assigned estate is that, by the death of the assignor, he being a mere surety, the liability upon his guaranty was extinguished, and they ceased to have any claim upon his estate; and the appellants rely for their contention upon the principle laid down in *United States* v. *Price* (9 How. [U. S.] 90); *Getty* v. *Binsse* (49 N. Y. 385); *Wood* v. *Fisk* (63 id. 245); *Risley* v. *Brown* (67 id. 160), and kindred cases.

It is undoubtedly the rule that in case of a joint obligation of sureties, if one of the obligors die, his representatives are, at law, discharged, and the survivor alone can be sued; but that where the joint obligors were all principal debtors, or received some benefit from the joint obligation, courts of equity have taken jurisdiction in the case of the death of one of the obligors, and enforced the obligation against his representatives. The ground upon which those courts have proceeded is that in conscience the estate of the deceased obligor ought to respond to the obligation; and they have given relief in all cases where, in consequence of a primary liability on the part of the deceased obligor, or of a benefit received by him from the joint obligation, it was morally and equitably just that his estate should be made liable, and unconscionable that it should be discharged. But it has been a rule in courts of equity that where the deceased joint obligor was a mere surety, receiving no benefit from the obligation, and having no interest therein except as surety, his estate, in case of his death, is discharged from liability. This rule, in such cases, rests upon the ground that the surety is not bound in morals or good conscience to pay, except in accordance with the strict letter of his obligation, and that being discharged therefrom at law, there is no room for the interference of equity upon principles of natural justice by them administered. The reasoning upon which the exemption of the deceased surety's estate from liability is founded, though sanctioned by numerous cases, is not very

convincing, and has not always been viewed by judges and jurists with favor.

It is difficult to perceive why the estate of a surety who was a joint obligor, upon whose credit and responsibility, mainly, the obligee loaned his money, should be discharged by the death of the surety. It would seem that in good conscience and sound morals, and upon principles of natural justice, it should respond, and bear the loss, if any, rather than the obligee who trusted the surety. But it has been quite uniformly held that the mere joint obligation of the deceased surety is not sufficient to create an equity against his estate.

In all the cases which have come under my observation where it has been held that death discharged the obligation of a joint surety, it appeared that the joint obligor was a mere surety, who received no benefit whatever from the joint obligation. The cases to be found in the books are generally those of joint accommodation indorsers of notes, joint sureties upon official bonds, or upon undertakings given on appeal, or mere sureties upon other instruments of a similar nature.

In *United States* v. *Price (supra)*, Judge GRIER said: " If a surety is under no moral obligation to pay where he is not legally bound by his contract, his conscience cannot be reached when the law discharges him from his obligation." In the case of *Kennedy* v. *Carpenter* (2 Wharton, 344) Carpenter and Overington were joint accommodation indorsers upon a note, and Carpenter died; and it was held that the note could not be enforced against his representatives. The court said: " The obligation arising out of the indorsement by Carpenter and Overington of the note to the bank being joint, it cannot be questioned but that at law the obligation survived against Overington alone, and the estate of Carpenter became thereby discharged from all liability on account of it. Had Carpenter derived any benefit or advantage from his indorsing the note, by having received the money or any portion thereof advanced upon it, the bank then might have had a claim in equity against his estate, if Overington and the defendants had proved insolvent and unable to pay. But Carpenter

and Overington appear to have derived no advantage what-
ever from the advancement of the money or creation of
the debt, and are, therefore, to be considered in equity as mere
sureties for the defendant; consequently the bank can have no
claim founded upon equitable principles, against the estate of
Carpenter after his death, for the repayment of the money."
In *Weaver* v. *Shryock, Executor, etc.* (6 S. & R. 262), Chief
Justice TILGHMAN, after deciding that the representative of a
deceased obligor who was a bare surety, who derived no benefit
from the money for which a joint bond was given, could not be
charged in equity, was careful to say that he " would not lay it
down as a rule, that in no case can recourse be had to the execu-
tor of a deceased obligor, who was discharged at law by death,
and who was only a surety." In *Harrison* v. *Field* (2
Wash. [Va. Ct. Appeals] 136) it was held that if a bond be
made joint without fraud or mistake, equity will not charge
the executor of the surety who was discharged at law by his
death in the life-time of the principal. In that case the deceased
obligor was a mere surety. Several opinions were there writ-
ten. ROUM, J., commenting on the case of *Simpson* v. *Vaughan*
(2 Atk. 32), said : " A moral obligation, therefore, was imposed
upon both obligors by the contract to pay the debt, and if, by
the form in which the bond was drawn, the remedy was gone at
law, the court thought it equitable to relate back to the moral
obligation, which was equally strong on both the obligors; but
in this case the surety was under no moral obligation." And
he further said: "I will not say that there may not be circum-
stances which would subject even a surety to the relief now
sought for." The president of the court, after citing and com-
menting upon *Simpson* v. *Vaughan* and other cases, said:
" The principle then, of these cases, has no application to the
present. The surety received no benefit from the loan; he
was bound by no contract, express or implied, antecedent to the
bond; he was under no moral obligation to pay, and of course
equity would not bind him further than he was bound at law.
It is a maxim that where equity is equal, he shall prevail who
has the law in his favor, and the cases cited in Francis' Maxims

of Equity, p. 71, as an illustration of the principle, are very strong, indeed, to show that a surety has equal equity with the obligee, and being discharged at law, equity will not charge him."

We must · now apply the principles thus brought to view, to the facts of this case. Here the joint guarantors owned nearly the entire stock of the corporation. They, with other persons interested in the corporation, desired that it should commence the business for which it was incorporated. It may be presumed that the purpose was to make profit for the benefit of the stockholders. No benefit to the corporation as an abstract entity, apart from its stockholders, could have been contemplated. They made the proposition to the citizens of Sandusky, who, for the purposes of this action, may be assumed to be the respondents, that if they would donate the land and loan the company $150,000, it would spend the money in erecting, upon the land, a rolling-mill, and would secure the payment of the money as hereinbefore stated. Therefore, in guaranteeing the bonds the obligors did not act as mere sureties; they were seeking a benefit for themselves in promoting an enterprise in which they were largely interested. Whatever would benefit the company would benefit them. They were acting to put. profits in their own pockets, and by means of the guaranty they actually obtained for their corporation the land donated and the $150,000. Under such circumstances the equities of the obligees and that attaching to the estate of the deceased obligor are not equal, that is, the equity of the estate to be discharged from liability is not so strong as the equity of the respondents to be paid out of the estate. In the forum of conscience, it seems to me, all men would say that the estate should respond. The guarantors were under a moral obligation to pay the obligees which affected their consciences, and when disaster came to their enterprise, it is not just, even in the case of the death of one of them, as between his estate and the obligees, that the loss should be visited upon the latter. This, therefore, is a case where there is a just foundation for a court of equity to intervene and save the obligation of the guaranty against the repre-

sentatives of the deceased surety. Therefore, while the cases re-lied upon by the learned counsel for the appellants contain un-guarded expressions, in some of them, sufficiently accurate as applied to the facts then under consideration, tending to sus-tain his views, they are not sufficient to uphold his contention in this case.

There are other important points ably discussed in the learned briefs submitted to us, but as the views already expressed are sufficient for the decision of this case we do not deem it impor-tant to enter upon a discussion of them.

Having, therefore, reached the conclusion that the death of the assignor did not extinguish the claims of the respondents against his estate, the judgment should be affirmed with costs against the appellants.

All concur, except FINCH, J., not voting.

Judgment affirmed.