Smith, P. J.
By the judgment in this action, the plaintiff has recovered back a sum of money alleged to have been overpaid by her, by mistake, upon the purchase by her of a farm of the defendant.
The deed of the farm described three pieces of land, of fifty, eighty and eleven acres, respectively, making in all 141 acres. In fact, the eleven acre piece was a part of the eighty acres, so that only 130 acres were conveyed. And the recovery is for the value of the eleven acres, in proportion to the price paid for the whole.
In the negotiations which led to the purchase, one Cooper acted as the agent of the plaintiff. Cooper had conversations with the defendant and also with one Pierce, her son-in-law, who lived on the place and who acted for her. The plaintiff gave in exchange for the farm, a deed of a farm of sixty-one acres owned by her, and $3,250 dollars in money. The referee found, in substance, that both parties supposed the defendant’s farm contained 141 acres, consisting of the parcels above referred to, and that in that respect they acted under a mutual mistake. •
It appeared in evidence that both the defendant and Pierce said to Cooper that the defendant’s farm contained 141 'acres. It also appeared, however, that Cooper learned that the farm was assessed by the town assessors at about 130 acres only, and that on reporting that fact to Pierce, the latter told him that the assessor made a mistake in the quantity, but, as it was making the taxes less, he, Pierce, kept still about it. Cooper testified that in reply to that he told Pierce that he couldn’t give the sum proposed if there were only 130 acres, and that Pierce then said “there were 141, for he had 207 acres of Crissey, and he only deeded one piece to Andrew Hunger of 66 acres.” Subsequently Cooper had a like conversation with the defendant. Still later, as Cooper testified, he again told Pierce he “would not give him $3,000 if there was not 141; he (Pierce) said he had only sold sixty-six; he said there will be over 141 *55 acres, for he beat Andrew Hunger a little in that trade and his deed won’t hold out; he said I am willing to deed you in three separate deeds, fifty, eighty and eleven acres, and that will make you perfectly safe.” Early in the negotiations, and prior to the conversations above detailed, Pierce had handed to Cooper a search or abstract of the title to the defendant’s farm, certified by the county clerk, by which it appeared that the parcel conveyed by the defendant to Hunger was described in the deed thereof as containing 77Í acres, and that statement in the search had been noticed by Cooper, But, according to his own testi • many, he did not mention that fact in his subsequent interviews with the defendant. He testified, however, that they (the defendant and Pierce) had the search longer than he had, and he supposed they knew about it.
Cooper also testified that after he saw the statement in the search he figured, and procured others to figure, to ascertain how much land had been deeded to Hunger as it appeared in the search (the metes and bounds being there given), and he also consulted the county atlas to see how it was set down there, but to no purpose. He also testified that he asked Pierce to have it surveyed, and “he replied if I wanted it surveyed I might, but he could not pay out anything for surveying, because he had Hr. Hoon to survey it, and he knew he had his land.” Cooper further testified that after that conversation he told Pierce that the clerk said there were seventy-seven acres deeded instead of sixty-six, but he did not testify that Pierce made any reply.
A comparison of the metes and bounds by which the eighty and eleven acre pieces, respectively are described in the deed executed by the defendant to the plaintiff, shows that the latter piece is a part of the former, their east lines being identical, and their north and south tines also, so far as the lines of the eleven acres extend.
Tire referee found that the statements of the defendant and her agent as to the number of acres were mistakenly made, and that the plaintiff believed them, and was induced thereby to make the purchase. That the mistake was material is not questioned.
The counsel for the appellant contends that the plaintiff is chargeable with loches, and for that reason ought not to recover. It is well settled in this state, that in general, in an action for money paid under a mutual mistake of facts, it is no defense that the mistake arose from a want of care on the part of the plaintiff, unless the other party has suffered loss in consequence of the mistake. Kingston Bank v. Eltinge, 40 N. Y., 391; The Union National Bank of Troy v. Sixth National Bank of New York, 43 id., 452; *56 Duncan v. Berlin, 60 id., 151; Lawrence v. The National Bank, 54 id., 432; The National Bank of Commerce in New York v. The National Mechanics' Banking Association of New York, 55 id., 211; Mayer v. Mayor, etc., of New York, 63 id., 455.
In the case of The Kingston Bank v. Eltinge (supra), it was said that, “on a sale and purchase of real estate, the-rule and the principle are different. It is a case of a bargain, in which the law requires the exercise of care and. attention. A party cannot then allege himself to be ignorant of a fact, of which he was put upon the inquiry and of which he could have obtained a knowledge by reasonable-diligence. In cases of bargains and sales the rule is applicable, vigilantibus et non dormientibus leges subveniunt." The case of Taylor v. Fleet (4 Barb , 95), was cited. The judgment in that case proceeded on the ground that neither fraud or mistake was shown, and that the most that the purchaser could claim was, that he was disappointed in finding that the land lacked in a comparatively unimportant degree, certain qualities, for which the vendor had warmly commended it, which would enhance its value for a particular purpose, but could have no influence upon its value for other or general purposes. Page 408.
In the present case, the referee has not found that the plaintiff was negligent. On the contrary, he has found that she relied upon the representations made by the defendant her agent, and believed them to be true. And the testimony supports the finding; for notwithstanding the doubts raised by the statement in the search and the other circumstances above stated, the positive assertions of Pierce that only sixty-six acres were sold to Hunger, and that he had had the land surveyed and knew that were 141 acres, were calculated to remove all doubts upon the subject. While a surveyor or other expert might have easily discovered from the description in the deed that the eleven acres were a part of the eighty, the fact would not readily be observed by an ordinary layman. It was separately described as that “other” piece-of land, and as “containing eleven acres.” Both parties-to the deed doubtless supposed it to be a separate parcel.
The case is, therefore, fairly within that of Paine v. Upton (87 N. Y. 337), cited by the respondent’s counsel.
It is not to be assumed, as the counsel for the appellant contends, that the referee reached his conclusion by supposing that the clerk’s certificate and the other matters above adverted to, did not come to the knowledge of the plaintiff or her agent till after the exchange was consummated. The contention is based on the fact that the referee declined to-find that the plaintiff had knowledge of those matters. *57 The refusal may have been on the ground that those matters were not issuable facts, but were matters of evidence merely, as, clearly, they were, and the subordinate issues-raised by them are merged in the general finding that the plaintiff relied upon the representations of the defendant.
The plaintiff’s counsel asked the witness, Cooper, “From what the defendant had stated to you, did you believe there were 141 acres in the land that was conveyed to the plaintiff ? ” The question was objected to on the ground that “ it is improper for the witness to give his belief in an action founded on a contract; no fraud is alleged and none claimed.” The objection was overruled, the defendant excepted and the witness answered, “I did.” It is contended that this was error. If the action had been to rescind the contract for fraud, or in affirmance of it, to recover damages for the fraud, there is abundant authority for saying that it would have been competent for the plaintiff to testify that he believed the alleged fraudulent representations of the defendant, and was induced by them to enter into the contract. We think it was also competent, in this-action, to show that the plaintiff, or her agent, relied upon the representations of the defendant, which, although not fraudulent, were untrue. In either case, the fact to be proved is, that the action of the plaintiff was induced by the statements of the other party, and if the testimony objected to is competent in one case, it seems to be equally so in the other. The case cited by the appellant’s counsel (Betjemann v. Brooks, 39 Hun, 649, and the cases there cited), do not sustain his position.
Equally unobjectionable was the question addressed to the plaintiff: “How many acres did you suppose you were getting in return ? ” It was competent upon the issue as to her mistake.
There are no other questions in the case.
The judgment should be affirmed, with costs.
Barker, Haight and Bradley, JJ., concur.