THÈ FIRST NATIONAL BANK OF OLATHE, *Appellee*, v.
H. C. LIVERMORE et al., *Appellants*.

No. 18,349.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Extension by Bank Cashier—New Security
—Release of Sureties.* It is assumed, but not decided, that a
cashier has authority, in virtue of his office, to extend the
time of payment of a note belonging to the bank, even if
sureties are thereby released, where new security ·is taken.

2. NEW NOTE—*Presumed to Suspend Time of Payment of ₁Old
Note.* Where a new note, payable at a future date, is taken
for the same debt evidenced by a past due note, which is not
surrendered, the parties are presumed to intend that action
on the old note shall be suspended until the maturity of the
new one, in the absence of anything to indicate a contrary
intention.

3. ———— *Stockholder Signing Note of Corporation Not Released
by Extension.* Where one of the principal stockholders,
who is also a director, signs a note with the corporation,
given to raise money for its benefit, intending to be bound
only as a surety, he is not entitled to the same liberality of
treatment that the law accords to volunteer sureties; and
·where the corporation is granted a valid extension of time,
without his knowledge, he is not thereby released from liability
unless he suffers some injury therefrom.

Appeal from Johnson district court. Opinion filed
July 5, 1913. Affirmed.

*J. W. Parker*, of Olathe, for the appellants.

*S. T. Seaton*, of Olathe, for the appellee.

The opinion of the court was delivered by

MASON, J.: The Olathe Milling & Elevator Company,
a corporation, borrowed two thousand dollars of C. L.
Hayes for use in its business, and gave him a note
therefor, signed by the corporation and by three in-
dividuals, who were the principal stockholders, and
were also directors of the corporation, but who other-

wise received no benefit from the transaction, and who intended to bind themselves as sureties only. The note was purchased by the First National Bank of Olathe, which brought action for a balance due thereon against two of the individual signers, H. C. Livermore and M. G. Miller. It recovered judgment, from which an appeal is taken.

The principal contention in behalf of the defendants is that they were discharged from liability by an extension of time given by the bank to the milling company for a valuable consideration without their consent. After the maturity of the note referred to the milling company executed to the cashier, for the benefit of the bank, a negotiable note for $12,700·due in ninety days, on account of various items of indebtedness, including the $2000. The defendants did not sign this note, and did not consent to it. The old note was not surrendered, and the new note was not entered on the books of the bank, but was placed in an envelope containing notes that had been·charged off. As security for the same indebtedness the milling company also executed a mortgage, which was afterwards held void as to creditors.

The defendants maintain that the transaction referred to amounted to a payment· of the $2000 note. The decision of the trial court implies a finding that the new note was not accepted as payment of the old, and this finding was warranted, if not compelled, by the evidence.

The plaintiff challenges the authority of the cashier to bind the bank by the acceptance of the new note. Such authority was not shown, unless it is to be regarded as incidental to the office. It has been held that a cashier has no implied authority to extend the time of payment of a note where the effect would be to release a surety. (*Bank v. Wetzel,* 58 W. Va. 1, 50 S. E. 886; *Vanderford v. Farmers' Bank,* 105 Md. 164, 66

Atl. 47.)  The contrary is held in *Wakefield Bank v. Truesdell*, 55 Barb. 602, cited in 5 Cyc. 473. We shall assume, without deciding, that where, as in this case, additional security was taken, the cashier may in virtue of his office extend the time of payment of a note, even if it results in the release of a surety. Such a transaction would be merely the exchange of one form of security for another.

If there were anything in the conduct of the parties from which an inference might be drawn that they did or did not intend an extension of the time of payment of the original debt the question would be one of fact. upon which the decision of the trial court would be final.  But we think there was no substantial evidence on the subject, beyond the bare fact of the making and acceptance of the later note, and in the absence of anything to indicate the contrary, by the weight of authority the presumption is that action on the first note was to be suspended until the maturity of the second. (7 Cyc. 891, 892; Note, 4 A. & E. Ann. Cas. 884.)

The defendants were clearly sureties in the sense that if they had paid the $2000 note they would have been entitled to reimbursement from the corporation. It is agreed that the bank when it bought the note knew that the defendants claimed to be sureties, and it must be deemed to have known of their actual relation to the transaction.

If the matter were ruled by the present statute relating to negotiable instruments no extension of time given to the corporation would release the other signers of the note.  That statute provides that one who by the terms of an instrument is absolutely required to pay it is "primarily liable." (Gen. Stat. 1909, § 5249.) It enumerates the methods by which one who is secondarily liable may be released, one of them being by an extension of time to the principal. (Gen. Stat. 1909, § 5373.)  It also enumerates the methods by which the

instrument may be discharged, without including any reference to the effect of an extension of time upon any of the parties. The inference is reasonable that co-makers of the note, although in fact sureties, can not claim a discharge on this ground, and this interpretation is well fortified by the decisions. (Note, 10 L. R. A., n. s., 129; Note, 26 L. R. A., n. s. 99; *Lane v. Hyder,* 163 Mo. App. 688, 147 S. W. 514; *Richards v. Bank Co.,* 81 Ohio St. 348, 90 N. E. 1000.) This statute, however, has no application to this case, because the note was executed in 1904, and the statute, which was enacted in 1905, includes a section reading, "The provisions of this act do not apply to negotiable instruments made and delivered prior to the passage thereof." (Gen. Stat. 1909, § 5252.)

The plaintiff contends that the defendants were not released from liability, even if the milling company was given a valid extension of time, for the reason that they were not entitled to the privileges of mere volunteer sureties in this respect, because, being themselves the principal stockholders, they had a personal interest in the making of the loan to the corporation. In Seymour D. Thompson's article on Corporations in the Cyclopedia of Law and Procedure it is said: "As the promise of a shareholder to pay the debt of a corporation is the promise to pay the debt of another, it entitles the promisor to all the rights and remedies of a surety as to extensions and renewals of credits not authorized by him. (10 Cyc. 651.) Only one case is cited in support of the proposition. (*Home Nat. Bank v. Estate of Waterman,* 134 Ill. 461, 29 N. E. 503.) There the ground of the ruling is stated to be that a corporation is a different person from any of its members. The particular question now suggested was not discussed. In *Pelton v. San Jacinto Lumber Co.,* 113 Cal. 21, 45 Pac. 12, action was brought upon a note signed by a corporation and indorsed by two stockholders. The indorsers

defended on the ground that without their knowledge
the note was altered before delivery by the insertion of
a provision making it payable in another state. The
court said:

"That the alteration of the note was material, and
such as would discharge sureties, whether indorsers
or guarantors, is unquestionable. . . . These prop-
ositions, as general rules, are not controverted by coun-
sel for respondent, but they contend that by reason of
the circumstances that Caswell and Fuller were stock-
holders of the corporation defendant, and, by virtue of
that relation, would be indirectly and incidentally ben-
efited by the loan, they are not entitled to the favor
accorded by law to uninterested sureties. But to this
point they have cited no authority, and I have found
none. Conceding that Caswell and Fuller were in-
directly benefited, the benefit could have been only in
proportion to the stock owned by them at the time of
the loan, and to that extent they were made personally
liable by force of section 322 of the Civil Code, *inde-
pendently of any contract*. But they are not sued on
their statutory liability. . . . They are sued on
an alleged contract which, according to the findings of
fact, they never executed." (pp. 24, 25.)

Under the circumstances stated the stockholders
would not have been liable even if they had been prin-
cipals, as no question peculiar to suretyship was in-
volved.

In *Bank v. Prescott,* 60 Kan. 490, 57 Pac. 121, it was
said, referring to a claim that the statutory liability of
stockholders for a debt of the corporation had been
released by an extension of time given to the company:
"We are not satisfied that the stockholders stand in
such relation to the corporation as to entitle them to
that favor and strict construction of their contracts
which is accorded to sureties." (p. 497.)

In *Richardson v. Draper et al.,* 87 N. Y. 337, the ad-
ministrator of one of several stockholders who had
jointly guaranteed the payment of bonds of the cor-
poration defended an action on the guaranty by in-

voking the rule which had been thus expressed in *Getty v. Binsse et al.*, 49 N. Y. 385:

"It is a well settled principle that, in case of a joint obligation, if one of the obligors die, his representatives are, at law, discharged, and the survivor alone can be sued. . . . It seems to be equally well settled that if the joint obligor, so dying, be a surety, not liable for the debt, irrespective of the joint obligation, his estate is absolutely discharged, both at law and in equity; the survivor only being liable. In such case, where the surety owed no debt outside and irrespective of the joint obligation, the contract is the measure and the limit of his obligation. He signs a joint contract and incurs a joint liability, and no other. Dying prior to his comaker, the liability all attaches to the survivor." (p. 388.)

The rule was conceded to be as so stated, but was held to be inapplicable, because the guarantors, as owners of the stock in the corporation, were interested in the loan made to the corporation. In the opinion it was said:

"In guaranteeing the bonds the obligors did not act as mere sureties; they were seeking a benefit for themselves in promoting an enterprise in which they were largely interested. Whatever would benefit the company would benefit them. They were acting to put profits in their own pockets." (*Richardson v. Draper et al.*, 87 N. Y. 337, 347.)

The case is in point upon the proposition that one who, to facilitate the raising of money by a corporation of which he is a stockholder, guarantees the payment of the loan, is not entitled to that extreme liberality of treatment which is accorded a volunteer surety. The rule by which an extension of time to the principal operates to discharge a surety is almost as technical as that by which the estate of a surety who is one of several joint obligors was held to be relieved of liability by his death. It is true that such extension for the time being prevents the surety from paying the debt and at once proceeding against the principal, and to that ex-

tent affects his legal rights. But where the rule applies he is relieved of liability although he may not suffer the least actual injury. The result is the same even where, as often happens, the extension of time increases the likelihood of payment by the principal. The real basis of the rule is that sureties are favorites of the law, and its application may well be limited to those who assume an obligation for others, having no personal interest in the matter.

In *Guaranty Co. v. Pressed Brick Co.*, 191 U. S. 416, a surety company bond was given to insure the payment of laborers and materialmen by a contractor engaged in the erection of a public building. Action was brought on the bond on account of the failure of the contractor to pay for some brick furnished him. The surety company defended on the ground that without its consent the brick company had given the contractor an extension of the time of payment, taking his notes due in thirty and sixty days. Against this contention the argument was advanced that a surety who receives compensation for his risk is not released by an extension of time to his principal, unless he suffers injury therefrom. The proposition was thus stated:

"Counsel for the brick company argued with much persuasiveness that this rule of *strictissimi juris*, though universally accepted as applicable to the undertaking of an ordinary guarantor, who is usually moved to lend his signature by motives of friendship or expectation of reciprocity, and without pecuniary consideration, has no application to the guaranty companies, recently created, which undertake, upon the payment of a stipulated compensation, and as a strictly business enterprise, to indemnify or insure the obligee in the bond against any failure of the obligor to perform his contract." (p. 423.)

The court refused to express any opinion on this question. The surety company was held liable upon the ground that the credit given to the contractor was only such as was customary and could fairly have been

26—90 KAN.

anticipated at the time the bond was given. In the opinion, however, it was said:

"The rule *strictissimi juris* is a stringent one, and is liable at times to work a practical injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation, which has undertaken for a profit to insure. the obligee against a failure of performance on the part of the principal obligor." (p. 426.)

In *United States v. United States Fidelity & G. Co.*, 178 Fed. 721, a number of federal cases were reviewed and a conclusion was reached which is fairly indicated by a headnote in these words:

"The rule of *strictissimi juris,* ordinarily applied in relief of an individual voluntary surety, is inapplicable to relieve a paid surety on a contractor's bond because of an extension of time to the principal; but such surety must show, in addition, actual injury." (¶ 2.)

Substantially this view has been taken by the circuit courts of appeals for the third and fourth circuits. (*United States Fidelity & Guaranty Co. v. United States,* 178 Fed. 692, 102 C. C. A. 192; *Atlantic Trust & Deposit Co. v. Town of Laurinburg,* 163 Fed. 690.)

One who after having executed a real-estate mortgage conveys the property to a grantee who assumes the payment of the debt may become entitled to the same treatment as a volunteer surety, although originally he was the principal. (*Stove Works v. Caswell,* 48 Kan. 689, 29 Pac. 1072; *Fisher v. Spillman,* 85 Kan. 552, 118 Pac. 65; Note, 4 L. R. A., n. s., 666.) That situation, however, grows out of the peculiar relationship of the parties. The mortgagee is not necessarily affected by the agreement between the mortgagor and the purchaser of the land, but if he elects to hold the latter personally he is required to treat his original debtor as a mere surety.

We acquiesce in the view that where a principal stockholder signs a note with the corporation, intend-

ing to be bound only as surety, he is not entitled to the same liberality of treatment which the law accords the volunteer surety; that where the corporation is granted an extension of time, for a consideration, the stockholder is not released from liability, although he did not consent thereto, unless it is shown that he suffered some injury therefrom.

The judgment is affirmed.