KASSABAUM, ADMINISTRATOR ET AL. *v.* BOARD OF
FINANCE OF THE TOWN OF LAKEVILLE.

[No. 27,131. Filed May 1, 1939.]

*Carl Weidler,* and *Arnold, Chipman & Degnan,* for
appellants.

*Roland Obenchain,* and *Jones, Obenchain & Butler,* for appellee.

SWAIM, J.—The appellants herein are seeking relief, under the provisions of chapter 78 of the Acts of 1933, §§61-701 to 61-709 Burns 1933, §§13845-13853 Baldwin's 1934, from a judgment taken against them, or against parties for whom they have been substituted, as sureties on a depository bond given pursuant to chapter 222 of the Acts of 1907, as amended.

On May 18, 1932, the appellee, Board of Finance of the Town of Lakeville, St. Joseph County, Indiana, recovered a judgment in the St. Joseph Superior Court, No. 2, against the appellants, John Olinger, Lee Wolff, Clem Shafer and John T. How and against John Eastburn, William Shafer and Henry Shafer, who have since died, on a depository bond given by the Lakeville State Bank, pursuant to the General Depository Act, and executed by the said judgment defendants as sureties. While an appeal on said judgment was pending the legislature enacted the Sureties Relief Act, ch. 78, Acts of 1933, *supra.* The said judgment was affirmed by the Appellate Court of Indiana and, thereafter, said judgment defendants filed in said cause in said St. Joseph Superior Court a petition predicated on said Sureties Relief Act *supra,* for an order for the satisfaction of said judgment to which petition the appellee appeared and filed answer. The court found the facts specially and stated its conclusions of law thereon. The court found that the judgment defendants "did have a pecuniary interest in the bond and its execution by virtue of their status as stockholders in said Lakeville State Bank," and that three of said defendants were at the time directors of said bank. The court's conclusions of law were to the effect that "none of said petitioners nor their respective estates were discharged by operation of said Chapter 78 of the Acts of 1933, as amended" and judgment against the petitioners was

entered accordingly. This appeal is based on errors assigned by petitioners to each of the court's four conclusions of law.

It is the contention of the appellee that the appellants do not come within the provisions of the 1933 Act because they were stockholders of the Lakeville State Bank, the principal on said bond. Section 2 of said act provides for the release and discharge of "any and all persons and the heirs, legatees, devisees and personal representatives of any and all persons who were accepted as freehold sureties and *became obligated without compensation* on any personal bond or bonds given pursuant to Chapter 222 of the Acts of 1907 . . . from any judgment or judgments which may have been rendered against them prior to the taking effect of this act, to the extent that deposits secured by such bond or bonds which were the basis of the action wherein said judgment or judgments were obtained, represent funds raised by general taxation in the municipal corporation or political subdivision making such deposits." (Our italics.)

The appellee contends that since the signers of the bonds were stockholders of the principal they did not "become obligated without compensation." The appellee argues that the stockholder sureties on the bond had a pecuniary interest in having the bank secure the deposit and, therefore, they received an indirect benefit for becoming obligated on the depository bond. The appellee has cited many cases which hold that stockholders of a corporation do have a pecuniary interest in the financial affairs of their corporation and do receive an indirect benefit from any benefit coming to their corporation. None of the cases cited by appellee involves the interpretation of the wording of a statute similar to the one here under consideration. Some of the cases so cited hold that a depository bond signed by stockholders as sureties should be strictly construed against such sureties and say that because of their

interest as stockholders they are not gratuitous sureties. In most of this class of cases, however, it also appears that the sureties involved had assisted in drawing up the bond. In other cases cited by appellee, courts have said that the personal interest of such sureties is such as to constitute sufficient consideration to bind them on such a bond. The appellee also cites cases holding that stockholders who have endorsed the notes of the corporation are not mere accommodation endorsers. The case of *First National Bank of Olathe* v. *Livermore* (1913), 90 Kan. 395, 133 Pac. 734 states that a principal stockholder of a corporation signing a note with the corporation and intending to be bound only as a surety is not entitled to the same liberality of treatment which the law accords the volunteer surety; and that an extension of time granted on the note without his consent does not release him unless it is shown that he suffered some injury therefrom. Still other cases are cited by appellee where stockholders of corporations have been held liable on their oral promises made on behalf of such corporations.

It cannot be denied that stockholders of a corporation do have a pecuniary interest in the affairs of such corporation and may derive an indirect benefit individually from any transaction which benefits the corporation. Our question, however, is whether such interest and such indirect benefit constitutes compensation within the meaning of the statute here in question. The corporation is a separate legal entity and a benefit accruing to it does not necessarily benefit the stockholders. At most the benefit to the stockholder is problematical and indirect. We do not believe the legislature had this sort of benefit in mind when it used the word "compensation."

Prior to the establishment of a state sinking fund and the repeal of the requirements for sureties on public depository bonds, there was a period of time beginning

with 1927 when it was practically impossible for the banks of many localities to secure paid corporate sureties on depository bonds. Beginning with 1927 our banks and trust companies had been failing with increasing frequency. The confidence of the general public in our financial institutions was at a very low ebb. It became increasingly difficult to obtain sureties, either corporate or personal, on depository bonds. At that time the law required that public funds be deposited in public depositories and protected by depository bonds or the deposit of securities. Under these circumstances many stockholders of banks and trust companies were induced to sign such bonds in order to qualify a depository for the acceptance of public funds. Under our law each of such stockholders was under a double liability for all of the stock of the bank which he owned, so the more stock he owned the greater was his liability for the debts of the bank. If as directors or officers of the bank they were guilty of any misfeasance or malfeasance they were individually liable, without limitation, for any resulting damage. We must assume that the members of the legislature had all of these facts and circumstances in mind when they enacted the 1933 statute relieving certain sureties on depository bonds. Having these facts and circumstances all in mind we do not believe the members of the legislature, by the words used in the 1933 act, intended to class stockholder sureties on depository bonds with the paid or hired corporate sureties and thus deprive such stockholder sureties of the benefits of said act.

The word "compensation" has been variously defined. Webster's New International Dictionary defines the word as, "That which constitutes, or is regarded as, an equivalent or recompense; that which makes good the lack or variation of something else; that which compensates for loss or privation; amends, remuneration, recompense." "Recompense" therein is defined, as, "To return an equiv-

alent for; to give compensation for; to atone for; to pay for." Sec. 1-201 Burns 1933, §5 Baldwin's 1934, provides that in construing statutes of this state, "Words and phrases shall be taken in their plain, or ordinary and usual sense." The plain, ordinary, and usual use of the word compensation is in the sense or meaning of payment. All of the definitions of the word we have examined also have the common idea of the return or payment of an equivalent, that is, of the payment of the full and equal value of the loss sustained or the service performed by the party to be compensated. While the stockholder of a bank, who as surety signs a depository bond on which the bank is principal and thereby secures the deposit of public funds in the bank, may receive an indirect benefit which would constitute a technical consideration for his executing the bond, such benefit would not be measured by the value of his service in signing the bond nor would it be in proportion to the risk involved by his becoming so obligated. It would depend only on the amount of stock he owned. The value of the service performed and the risk involved would be the same for the stockholder owning one share of stock as for the stockholder owning one hundred shares although the benefit accruing to the latter would be one hundred times as great as that accruing to the owner of the one share. That type of indirect, disproportionate benefit does not come within the common, ordinary, definition of compensation. The ordinary paid surety, on the other hand, fixes the amount of his fee in proportion to the amount of the bond and the risk involved in his becoming obligated thereon. He is then paid his fee directly for becoming so obligated and thus receives compensation within the meaning of said statute.

The appellee contends that this construction of the statute brings the statute in conflict with §23 of Article

I of the Constitution of the State of Indiana, this contention being based on the theory that there is no reasonable basis of classification or distinction between the ordinary paid surety, or compensated surety as we have interpreted the statute, and the stockholder surety. With this contention we cannot agree. The paid surety becomes obligated for a certain fee or price which he has fixed as being commensurate with the risk involved. This type of surety is usually a corporation organized for that very type of business. The fees of the compensated surety, for becoming obligated on such a bond, are based on experience and are fixed high enough to cover anticipated losses and still leave a profit from the fees charged. Such fees are fixed in much the same manner as are insurance premiums. The courts have held, almost without exception and for many different purposes, that this type of surety belongs in a different classification from the unpaid, voluntary surety. See Annotations and cases in 12 A. L. R. 382 and in 94 A. L. R. 876. There is an inherent and fundamental difference between the type of surety, who solicits the opportunity to become obligated for a fixed fee as a matter of his regular business and to whom a loss on the bond is an anticipated incident of his business, and the casual surety who is induced to become obligated on such a bond without compensation in order that a depositary may qualify under the law to receive the deposit of public funds. This inherent and fundamental difference between the two types of sureties gives a reasonable basis for classification in a statute relieving the uncompensated surety from liability. The fact that the statute releases from liability individuals who, as stockholders of the depository bank, might have received an indirect benefit from having become obligated on such a bond, does not invalidate the classification. As said by this court in the case of *Cin-*

*cinnati, H. & D. R. Co.* v. *McCullom, Admr.* (1915), 183 Ind. 556, 561, 109 N. E. 206:

"The power of the legislature is not without limitations but, necessarily, this power must have a wide range of discretion. There is no precise rule of reasonableness of classification, and the rule of equality permits many inequalities. A classification having some reasonable basis is not to be condemned merely because it is not framed with such mathematical nicety as to include all within the reason of the classification and to exclude all others. Exact exclusion and inclusion is impractical in legislation. It is almost impossible to provide for every exceptional and imaginary case, and a legislature ought not to be required to do so at the risk of having its legislation declared void, even though appropriate and proper as applied to the general subject upon which the law is intended to operate (citing cases)."

The remaining questions raised by the appellee as to the validity of the Public Sureties Relief Act of 1933 were fully considered, discussed and decided in the case of *Bolivar Township Board of Finance of Benton County* v. *Hawkins* (1934), 207 Ind. 171, 191 N. E. 158. The appellee insists that the opinion in the Bolivar case, *supra*, does not constitute a controlling precedent because only two of the judges joined in the opinion of the court in that case. In 1935 this court again had before it the question of the constitutionality of said act in the case of *Wise* v. *White* (1935), 208 Ind. 343, 193 N. E. 85, and again, by a decision of two judges it was held constitutional. In the case of *Taelman* v. *Board of Finance of School City of South Bend* (1937), 212 Ind. 26, 6 N. E. (2d) 557, decided in 1936, this court cited the Bolivar case on the interpretation of the act without any question being raised as to the validity of the act. Within the past two months this court, in the case of *State ex rel. Jackson* v. *Middleton et al.* (1939), ante 219, 19 N. E. (2d) 270, cited the Bolivar case as authority on the question of the validity of a statute releasing county clerks from

liability for the loss of funds lost in banks which had failed and held that the statute in question did not impair the obligation of contracts.

When the provisions of the 1907 General Depository Act were repealed in 1932 the class of sureties who could possibly be affected by the 1933 Relief Act became sealed. The 1933 act only purported to release those sureties who had become obligated prior to 1933. This relief statute only applied to situations which had been created prior to the passage of the act. It acted only retrospectively in so far as the class of those to be relieved was concerned. It is only fair to assume that in the intervening six years since the passage of said act, practically all of the claims which could possibly arise under said act have been finally settled and the sureties released pursuant to the terms of said statute and on the authority of the Bolivar case. For this court at this late date to repudiate the decision in the Bolivar case and now hold the act unconstitutional would only add confusion to the situation. This court could not now be justified in holding the statute invalid without the most convincing and unanswerable reasons therefor. We find no such overwhelming reasons for holding this act unconstitutional.

In view of the conclusion we have reached, the consideration of the separate questions presented as to the appellant, Clyde Shafer, Administrator of the estate of Henry Shafer, deceased, is unnecessary.

The judgment is reversed with instructions to the trial court to restate the conclusions of law and enter judgment thereon in conformity with this opinion.