53  95
130a 313

53h  95
67 A D³438

HERMAN C. BASKIN and Others, Respondents, *v.* JOHN T. ANDREWS, HENRY HUNTINGTON, as Executor of the Last Will and Testament of JAMES HUNTINGTON, Deceased, and CHARLES BELL, as Late Sheriff of Yates County, Appellants.

*Death of one of several joint sureties — former rule as to the release of his estate — reason thereof — effect of the recovery of a judgment against the surety before his death.*

The rule existing prior to its change by section 758 of the Code of Civil Procedure, that upon the death of one of two or more sureties, jointly liable for a debt of which such sureties received no part of the consideration or benefit, that his estate was discharged from the payment of such obligation, did not apply to a case

where, after the maturity of the principal obligation, and prior to the death of the surety in question, a judgment was obtained by the payee therein against all the parties liable therefor.

*Hauck* v. *Craighead* (67 N. Y., 432); *Richardson* v. *Draper* (87 id., 337); *Randall* v. *Sackett* (77 id., 480) distinguished.

The rule existing prior to section 758 of the Code of Civil Procedure was not a rule of liability, but rather a rule of procedure, arising from the inability of the courts first enunciating the principle, before the consolidation of the modes of procedure in law and equity, to say how the liability of the estate of the deceased surety could be enforced in an action at law in conjunction with that of other parties who were liable for the indebtedness.

The rule was not that the estate of the surety or of the joint obligor was entirely released by his death, but rather that the remedy at common law against the personal representatives of such deceased person was lost by the death of the latter.

The liability existing after judgment is one of lien and not of procedure.

Although, by bringing the action against all parties liable under the obligation, the payees elect to treat such obligation as joint only, the judgment, as to each party thereto, imposes a joint and several liability upon the judgment-debtors.

APPEAL by the defendants from a judgment of the Supreme Court, entered upon the report of a referee in the office of the clerk of the county of Yates on the 17th day of December, 1888, by which it was adjudged that the estate of William R. Baskin, deceased, was discharged from the payment of a judgment recovered by the defendants, John T. Andrews and one James Huntington against the said William R. Baskin, James L. Brewer and Mary E. Huson, and by which the defendants and all persons claiming under them were perpetually restrained from enforcing the payment of an execution issued on said judgment from the estate of said William R. Baskin, and from the lands and real estate of which he died seized.

*Charles S. Baker*, for the appellants.

*Lyman J. Baskin*, for the respondents.

MACOMBER, J.:

The questions presented by this appeal arise mainly from facts alleged in the complaint and admitted by the answer.

One Mary E. Huson, as principal maker, and James L. Brewer and William R. Baskin (the latter now deceased), as sureties, did, on the 22d day of February, 1876, execute and deliver their joint and several promissory note to the defendant Andrews and to James

Huntington, now deceased, of whose last will the defendant Huntington is executor, in the sum of $800, payable on the first day of March thereafter. After the maturity of the note action was brought thereon by the payees, which resulted in a judgment against all the parties liable upon the note for the full amount thereof, with costs, which judgment was entered and docketed in the proper clerk's office on the 7th day of June, 1876. One year thereafter, namely, on the 7th of June, 1877, William R. Baskin, one of the defendants in that action, died intestate seized of certain real estate described in the complaint. This real estate is now, by inheritance and otherwise, owned by and in possession of the plaintiffs. Execution was issued upon such judgment on the 11th day of March, 1881, to the sheriff of Yates county. No return was made upon this execution, so far as appears in the record, but, on the 7th day of April, 1886, after the expiration of the term of office of the sheriff to whom such execution had been issued, the lands above mentioned were levied upon and offered for sale to satisfy such judgment.

This action is brought for the purpose of enjoining perpetually the enforcement of the judgment against the lands of the plaintiffs. The referee has found, as a conclusion of law, that by reason of the judgment taken against all of the parties, including the principal debtor, Mary E. Huson, and the two sureties, Baskin and Brewer, the estate of Baskin became discharged from all liability thereon by reason of his death.

The argument of the learned counsel for the plaintiffs is to the effect that, though the note which was so put in judgment was a joint and several obligation, by taking a judgment against all parties thereto, the payee selected to treat the obligation as joint only, and hence the note was merged in the judgment, and became a joint obligation of the parties defendant in the judgment; and that William R. Baskin, having died after such joint judgment was taken, being a surety only upon the note, and receiving no part of the money upon the note or any benefit therefrom, was, and his estate is, discharged from the payment of such judgment. Mr. Baskin having died before the enactment of section 758 of the Code of Civil Procedure, the rule applicable to this case is the one existing at

common law, as established by sundry cases in our courts, as is contended by the counsel for the plaintiffs. It becomes necessary, therefore, to examine somewhat in detail the authorities relied upon for such contention.

In the case of *McNulty* v. *Hurd* (18 Hun, 1), there is language used by the court which would go far to sustain the argument thus made, but upon an examination of the case it will be found that the decision turned upon the fact that the creditor had, by his dealing with the principal debtor without the knowledge or consent of the surety, released the surety from his obligation.

In the case of *Risley* v. *Brown* (67 N. Y., 160), it was held that upon the death of one of the makers of a joint promissory note, who had simply signed as surety, his estate was absolutely discharged from the payment thereof, both in law and in equity. The case arose upon a motion to substitute the personal representatives of a surety, against whose principal a joint judgment had been obtained, as defendants in his stead, he having died after the affirmance of the judgment by the General Term and during the pendency of an appeal to the Court of Appeals, upon which appeal an undertaking had been given staying execution. The head note in this case speaks of the judgment against the surety being discharged by his death, but there is nothing in the case itself that would warrant such an assertion.

The case of *Hauck* v. *Craighead* (67 N. Y., 432), was one either of joint liability or suretyship, and it was there held that in such a case the estate of the deceased party was released. In the case of *Richardson* v. *Draper* (87 N. Y., 337), it was held that the death of a joint obligor discharges his obligation only in a case where it appears that he is a mere surety and received no benefit whatever from the obligation. The court there says: "It is, undoubtedly, the rule that in case of a joint obligation of sureties, if one of the obligors die his representatives are, at law, discharged, and the survivor alone can be sued; but, that where the joint obligors were all principal debtors or received some benefit from the joint obligation, courts of equity have taken jurisdiction in the case of the death of one of the obligors and enforced the obligation against his representatives. The ground upon which those courts have proceeded is that in conscience the estate of a deceased obligor ought to respond to

the obligation; and they have given relief in all cases where, in consequence of a primary liability on the part of the deceased obligor, or of a benefit received by him from the joint obligation, it was morally and equitably just that his estate should be made liable, and unconscionable that it should be discharged. * * * The reasoning upon which the exemption of the deceased surety's estate from liability is founded, though sanctioned by numerous cases, is not very convincing, and has not always been viewed by judges and jurists with favor. It is difficult to perceive why the estate of a surety who was a joint obligor, upon whose credit and responsibility, mainly, the obligee loaned his money, should be discharged by the death of the surety. It would seem that, in good conscience and sound morals, and upon principles of natural justice, it should respond and bear the loss, if any, rather than the obligee who trusted the surety. But it has been quite uniformly held that the mere joint obligation of a deceased surety is not sufficient to create an equity against his estate."

The case of *Randall* v. Sackett (77 N. Y., 480), which arose before the passage of the section of the Code already referred to, merely decides that it is not permissible, on a motion before judgment, to bring in the personal representatives as defendants, in place of one of two sureties who had died after action brought.

None of the cases above mentioned, nor others upon the same general subject referred to in the several opinions in those cases, involve the question before us. When thoroughly analyzed it is found that they go no further than to hold that, under the practice as it stood before the enactment of section 758 of the Code of Civil Procedure, the personal representatives could not be charged in an action with other parties where the deceased person, whom they represented, was a mere surety or a joint obligor. This, however, was not a rule of liability; it was rather a rule of procedure. Its origin, doubtless, may be found in the inability of the courts first enunciating the principle before the consolidation of the modes of procedure in law and in equity, to see how the liability should be enforced in an action at law in conjunction with other persons who were liable for the entire indebtedness. If there be a defect in the reasoning of the earlier cases upon this subject, it is attributable rather to the distribution of judicial powers among the different

courts than to any inherent difficulty in enforcing liability against persons standing in different relations to the creditor. Provisions did not then exist for enforcing a judgment that might be procured against the personal representatives in such an action. I do not understand, however, that the cases have gone to the extent of holding that the estate of a surety, or of a joint obligor, is entirely released by his death, but rather only to the extent of holding that the remedy at common law against the personal representatives of such deceased person is lost by the death of the latter. None of the cases have gone so far as to declare that any lien which a creditor might have upon the property of the surety or of the joint obligor should be discharged by the death of the latter. The rule was established only to relieve the personal estate and personal representatives from the beginning of an action, or the continuance thereof after it was begun, before judgment, when instituted to collect the indebtedness incurred by the surety or joint obligor.

The case which comes nearest to being a guide for us in the case at bar is that of *Smith* v. *Osborne* (31 Hun, 390). In that case the party executed a joint promissory note, solely for the accommodation of the maker, with knowledge of such relationship of the parties by the payee. The transferee of the note brought an action against the surety alone, and recovered judgment thereon. Eleven months thereafter the defendant in such judgment died. The action was brought by the administrators of Osborne to have the judgment vacated, and to have the estate relieved from all liability thereon, the same as prayed for in this case. It was there held that the entry of the judgment severed the joint liability of the makers of the note, and that thereafter the judgment-debtor alone was liable, and that the death of the debtor did not relieve his estate from liability upon the judgment, and that the action could not be maintained. It is true that in the case last cited the court emphasized the fact that there was, in effect, a severance of the cause of action, inasmuch as it was brought only against the surety, and held that the promise to pay the judgment, which the law implies, was a several promise. Resort, however, need not be had to the relations of the several parties to the original cause of action after judgment has been entered, because the question of liability after judgment is one of lien and not of procedure. The liability of each party to the

judgment in this action was joint and several. The lien of the judgment was joint and several. Why, therefore, it may well be asked, should the lien of the judgment be discharged by the death of the owner of the property upon which it was a lien? There is no provision of law for so holding. Suppose, for instance, that Mr. Baskin had given his mortgage, which would have been a lien of very much the same nature as this judgment, could it be reasonably contended that his property was released from the lien by reason of his death? There is no difference perceptible between the lien in this instance and that created by a mortgage. In both instances, it may be said, it would be a voluntary lien, in one instance created directly by his own act, and in the other by his failure to meet, at maturity, the obligation which he had signed.

It follows, from these considerations, that the judgment should be reversed and a new trial ordered before another referee, with costs to the appellants, to abide the final award of costs.

All concurred.

Judgment reversed, and new trial granted before another referee, with costs of this appeal to the defendants, to abide the final award of costs.