## PEOPLE ex el. NASH v. FAULKNER.

*(Supreme Court, General Term, Fifth Department. December 30, 1889.)*

1. EVIDENCE—REPUTATION—PARTICULAR ACTS.
   Where the reputation of a banker is shown to be high in the community, and his financial standing good, testimony that he engaged in stock speculations, or of other particular acts, is inadmissible to contradict such reputation.

2. SURROGATES—DEPOSIT OF FUNDS—BONA FIDES.
   Evidence that a banker, though reputed to be solvent, was in fact insolvent, and engaged in stock speculations, is insufficient to prove a lack of good faith or want of due diligence on the part of a surrogate who deposits funds of an estate paid over to him for distribution with the banker, unless it appear that the surrogate knew of such facts, or might have known by inquiry

Appeal from circuit court, Livingston county.

Action by the people *ex rel.* Edwin A. Nash, surrogate of Livingston county, against Lester B. Faulkner, executor of James Faulkner, deceased, a surety on the official bond of Samuel D. Faulkner, a former surrogate of Livingston county, to recover money of an estate deposited in a private' bank, which failed. The action has been tried three times: First, at the circuit court in Livingston county, February 9, 1882, before Mr. Justice DWIGHT, without a jury, when the complaint was dismissed, judgment being subsequently entered against plaintiff for $70.78 costs. On appeal to the general term the judgment was reversed, and a new trial ordered. 31 Hun, 317. The second trial was before Mr. Justice RUMSEY, without a jury, and resulted in a judgment, September 18, 1884, for plaintiff in the sum of $2,950.92, which judgment was, on appeal to the general term, affirmed. 38 Hun, 607. Defendants thereupon appealed to the court of appeals, where the judgment of the supreme court was reversed, and a new trial ordered, December 6, 1887. See 14 N. E. Rep. 415. While the appeal was pending in the general term, James Faulkner, one of the original defendants, died, and by an order of this court, duly entered, on the 4th day of May, 1885, James Faulkner, Jr., his executor, was substituted in his place as defendant. After the decision of the court of appeals, the surrogate of Livingston county revoked the letters testamentary to James Faulkner, Jr., and issued letters to Lester B. Faulkner, also named as executor in the will of James Faulkner, deceased, and Lester B. Faulkner, as such executor, was substituted as defendant in the place of James Faulkner, Jr. The action came on to be tried for the third time in Geneseo, before Mr. Justice ANGLE and a jury, November 12, 1888. There was a verdict for plaintiff, and from the judgment entered thereon, and the order denying a motion for a new trial, and from other orders made on trial, to-wit, an order denying defendant's motion for leave to file a supplemental answer, and from an order severing the action, and directing it to proceed against the defendant alone, defendant again appeals.

Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.

*Faulkner & Bissell,* for appellant. *James Wood,* for respondent.

MACOMBER, J. This action is brought on two official bonds of the late Samuel D. Faulkner, surrogate of the county of Livingston, to recover moneys alleged to have been in his hands at the time of his death belonging to the estate of one Samuel Finley, deceased, and which had been paid to such surrogate for the purpose of distribution among the creditors of Finley. The defense interposed is not a denial of the receipt of the moneys, and the deposit of the same, but an allegation that the moneys so received were deposited by

the surrogate with one James J. Cone, a private banker in Geneseo, a person in good credit and standing at the time of the deposit, but who afterwards failed, and by such failure the moneys were lost, without fault on the part of the surrogate.

The decision of the court of appeals in this action, as reported in 107 N. Y. 477, 14 N. E. Rep. 415, holds that the liability of the surrogate in receiving the moneys above mentioned was not absolute and unconditional, but that he would be discharged from liability for the loss of the same unless it was shown that he was guilty of a want of care and diligence or prudence in depositing the same in this private bank. The question, therefore, presented at the last and the third trial of the cause related to the care, prudence, and diligence of the surrogate in making the deposit in Cone's bank of the several sums of money, and in continuing them in such bank. It is true that some of these moneys were deposited by the district attorney of the county, acting for the surrogate, in the latter's absence; but the district attorney had only followed the precedent set by the surrogate himself, and the latter, upon his return and resumption of the duties of the office, assumed as far as possible the responsibility of the deposit made in his absence. The question whether Samuel D. Faulkner acted in good faith, and with due and proper diligence, in depositing the moneys in Cone's bank, was decided by the jury adversely to the defendant, who is the sole representative of the estate of one of the sureties upon the bond. Under this decision of the court of appeals, already mentioned, if there was sufficient evidence to sustain this conclusion of the jury, and no incompetent evidence laid before them upon that subject, their determination cannot be disturbed by us. The testimony upon this branch of the case, naturally, would take a wide range. The actual condition of this private banker at the time of the deposits was satisfactorily shown to be that of an insolvent; yet no person seems to have been aware of the fact, unless it was the banker himself. The reputation of Mr. Cone in the community was high, his financial standing excellent, as was shown by many witnesses called in behalf of the defendant. Up to the day of the failure of this banker, he was doing a general banking business, and was apparently prosperous, and of very high credit. Other circumstances showing the good faith and reliance of the late surrogate in the financial responsibility of the depositary are that Cone himself was a creditor of the Finley estate in a large sum, and that a prominent lawyer in Geneseo, one of the administrators of the Finley estate, was a depositor of moneys with Cone, and that litigation was pending in regard to the Finley estate of such a character as would, in all human probability, prevent the final distribution of the moneys of that estate for some years to come, and that consequently it was important and desirable for all parties concerned to place them where they would draw interest. Furthermore, the banking house of Cone was one which had existed for upwards of 23 years, carried on by father and son, in connection with Ayrault, and had during those years the entire confidence of the community. Opposed to these circumstances showing the good faith and prudence of the surrogate, evidence was given that there existed in the same village of Geneseo an incorporated bank, where these moneys might have been placed. It was further shown that, by other large losses, by failures of business firms, and otherwise, James J. Cone was actually insolvent nearly back to the time when he assumed the sole control of the business, in the year 1868. Indeed, the jury was justified in finding, as matter of fact, that Cone was actually unable to pay his debts at the time these deposits were made. It undoubtedly is correctly stated by the learned counsel for the respondent that the question at the trial, whether Cone was a banker in good standing and of good credit, was to be determined mainly by his reputation as a banker in the place where his business was conducted. Evidence of his general reputation for financial stability was competent, and was given by many witnesses. Had his general reputation been

bad, and had the surrogate, through want of care, failed to discover the same, liability might attach against him, under the decision already mentioned above, even without actual knowledge on his part of such reputation. The jury, however, would have taken into the account the fact that Geneseo was not the place of the residence of the surrogate, but only his official abode; he being there occasionally, in the discharge of his public duties. Had the case been confined by the evidence to the fact of reputation or repute in the business community, the appellant would not, in our judgment, have any right to complain of the character of the evidence adduced.

It appears, however, that the evidence was not confined to the general reputation of the banker for financial responsibility, but that other evidence, not amounting to repute or reputation, was admitted; and the jury was permitted to consider the same in arriving at their conclusion upon the general question of the exercise of prudence and good faith on the part of the surrogate. On the trial the following proceedings were had: "Plaintiff's counsel proposes to show the cause of the losses, and to show by other witnesses that it was common report, and was understood in Geneseo, that Cone and Olmstead —both of them—were engaged in stock speculation before the failure." This evidence was objected to, and the objection overruled, and exception taken. "*Question.* Prior to James Cone's failure, was it reported here that he was dealing in margins,—stocks? (The defendant's counsel objected as incompetent and immaterial. The objection was overruled, and defendant's counsel excepted.) *Answer.* Oh, yes; that is so. That is why he lost with Fitzhugh & Jenkins,—dealing in stocks; stock operations, I understood it. *Q.* It was common report here in the village that he was engaged in that business, wasn't it? *A.* I think it was, sir. *Q.* Up to the time of his failure? *A.* Yes, sir." No attempt was made to show that the surrogate knew of the reports or rumors that Cone was speculating in stocks upon a margin. The witness Killip testified as follows: "I think I first learned what I knew about James J. Cone by virtue of being connected with the Western Union Telegraph Company. When I heard these rumors, and people spoke to me, and asked me if it was true, I never told any one that it was true. I avoided answering them as best I might. I avoided it by saying that I did not read any dispatches, etc. * * * I don't believe I ever spoke about it to anybody. I did not confirm the report,—didn't intend to, at least; I didn't deny the report." We have, therefore, what appears to be evidence of an unreliable rumor, not of the general financial standing of the banker, but of some particular act of his from which it is argued that the surrogate was remiss in his duties. This evidence does not come up to the point of showing by reputation and repute the financial standing of a man. Business reputation, as disclosed by the opinion of well-informed persons of a community, is a. fact, and not a mere opinion, and is based upon a thousand and one things which enter into the body of the thinking of well intentioned men, and necessarily includes the refutation of a thousand and one mere idle rumors of some particular act of the party involved. When, therefore, this evidence was laid before the jury for their consideration, alike in its reception from the witness chair as in charge of the court, the jury was thereby permitted to go outside of well-ascertained facts, and to base their verdict upon the possibility that the rumors that Cone was speculating in stocks was true, and that the same had come to the knowledge of the late surrogate, and that he was bound to know of the same. This, in our judgment, was error; for it is impossible, under the testimony as disclosed, to separate this evidence from the competent evidence in the case, and to declare that the same could not have influenced a verdict unfavorably to the defendant.

The further question, whether this action could be severed, or whether it could be maintained against the personal representative of the surety upon the bond of the surrogate, is, as we think, fully disposed of favorably to the re-

spondent in our decision in the case of *Baskin* v. *Andrews*, 6 N. Y. Supp. 441. The judgment and order appealed from, denying motion for a new trial, should be reversed, and a new trial had, with costs to the appellant to abide the event. The other orders, severing the action and denying the defendant's motion for leave to file a supplemental answer, were correct, and should be affirmed. All concur.