E. V. THOMPSON v. RUDOLPH PFEIFFER, *Executor of the last will and testament of Gardner T. Barker, deceased.*

No. 11081.

1. PRACTICE, SUPREME COURT—*Findings Undisturbed.* The well-established rule is again reiterated, that a judgment of the trial court will not be disturbed when founded upon disputed questions of fact.

2. CORPORATIONS—*Service upon President not Void—Agency.* V. was an indorser upon certificates of deposit issued by an incorporated bank, which made default in the payment of the same. The indorsee sued V. and attached his land. Confessing his liability, V. secured the holder of the certificates by mortgage on his

property, and then indemnified the holder against costs, attorneys' fees and expenses of suits which he induced him to bring against the bank, and later against T., who was a stockholder, for the purpose of enforcing the statutory liability. V., through his son, who was president of the bank, suggested the names of counsel to conduct the suits, and they were retained. Both V. and his son were active in furthering the prosecution of the cases, but V. had no connection with the bank as a stockholder or otherwise. Summons in the suit against the bank was served on V.'s son, as president, and judgment was rendered by default. The certificates of deposit in issue represented a *bona fide* indebtedness of the bank. *Held*, that the president of the bank was not so far the agent of plaintiff in the suit as to render service upon him void, and a judgment against the bank based thereon a nullity; nor did his interest on behalf of the plaintiff have such effect.

3. Practice, District Court—*Indorsement on Summons.* It is a sufficient compliance with section 54, chapter 95, General Statutes of 1897 (Gen. Stat. 1889, ¶ 4138), when the amount for which judgment will be taken, if the defendant fail to answer, appears on the face of the summons.

4. Corporation—*Action against Stockholder—Sheriff's Return.* An execution returned "no property found," issued on a judgment against a corporation, is sufficient to justify a suit against a stockholder to enforce his liability as such, under section 50, chapter 66, General Statutes of 1897 (Gen. Stat. 1889, ¶ 1192); and in the absence of fraud on the part of the sheriff, the truth of his return cannot be challenged by a stockholder when sued by a creditor of the corporation.

5. ———— *Case Followed.* The case of *Sleeper v. Norris*, 59 Kan. 555, 53 Pac. 757, followed.

Error from Reno district court; Matthew P. Simpson, judge. Opinion filed April 8, 1899. Affirmed.

### STATEMENT.

In October, 1886, a corporation known as the Bank of Burrton was organized, with a capital stock of $50,-000, divided into 500 shares of the par value of $100 each. The plaintiff in error was one of the incorporators, and there were issued to him forty-five shares of stock. W. O. Van Arsdale was also a stockholder, and was elected president of the bank. J. E. How-

ard was cashier, and had active management of the affairs of the institution up to about 1892. From that time on W. O. Van Arsdale had the active management. On May 10, 1892, plaintiff in error transferred his stock to his brother, R. S. Thompson, making the latter his attorney in fact to transfer the same on the books of the company, but said transfer was never entered on the stock-book of the bank. Later the stock was transferred by R. S. Thompson to the Bank of Burrton.

During the months of June, July, and August, 1892, the Bank of Burrton borrowed from Henry P. Ayers various sums of money, aggregating $12,000, for which certificates of deposit were issued to said Ayers, and all were indorsed before delivery by W. O. Van Arsdale, J. E. Howard, and J. H. Van Arsdale. The latter was the father of W. O. Van Arsdale. Subsequently, and in June, July, and August, 1893, the said indebtedness to Henry P. Ayers was renewed and new certificates of deposit issued, due in 1894. These were also indorsed by W. O. Van Arsdale and J. E. Howard, and indorsed and payment guaranteed by J. H. Van Arsdale as before. Henry P. Ayers was the confidential agent of Gardner T. Barker, and the amounts represented by these certificates of deposit belonged to said Barker. On the death of Henry P. Ayers, his executrix indorsed and delivered these certificates to Gardner T. Barker. Soon after Barker died, and Rudolph Pfeiffer, the defendant in error, was appointed executor of his will at Peoria, Ill., the place of his residence.

Before this, and in February, 1893, the Bank of Burrton went into voluntary liquidation and ceased to do business beyond paying its depositors and arranging for the winding up of its affairs. In furtherance

of the scheme of liquidation, power was given to W. O. Van Arsdale to use the assets of the bank to be pledged as collateral security for money to be borrowed to pay off depositors. About March 1, 1893, the Burrton Bank was organized and commenced a banking business upon the premises formerly occupied by the Bank of Burrton, and W. O. Van Arsdale was also president of the new corporation. After Mr. Barker's death, his executor, Rudolph Pfeiffer, defendant in error herein, demanded payment of these certificates of deposit. Default being made, he brought suit and attached 320 acres of land in Illinois belonging to J. H. Van Arsdale. Thereupon, confessing his liability, J. H. Van Arsdale made an arrangement with Pfeiffer whereby he gave to said executor a mortgage covering the full amount of those certificates issued by the Bank of Burrton together with $1000 additional which he owed personally to Mr. Barker, including seventy-five dollars attorneys' fees and costs incurred in the attachment suit at Peoria. This mortgage was to run until 1900, and was given as collateral security to the payment of the certificates of deposit upon which the judgment in this suit was based. About the time of this transaction J. H. Van Arsdale, as principal, and John Wilson, as surety, executed and delivered to the defendant in error a bond as follows :

"WHEREAS, Rudolph Pfeiffer, of Peoria, Ill., as executor of the last will and testament of Gardner T. Barker, deceased, is the owner of the following loans :

"No. 1515.—A $3000 note of the Burrton Land and Town Company to Henry P. Ayers, dated June 1, 1893, due June 1, 1894, with seven per cent. interest.

"No. 1524.—A $2000 certificate of deposit of the Bank of Burrton to Henry P. Ayers, dated July 1, 1893, due July 1, 1894, with seven per cent. interest.

"No. 1525.—A $2000 certificate of the Bank of Burrton to Henry P. Ayers, dated July 1, 1893, due 1894, with seven per cent. interest.

"No. 1602.—A $1000 certificate of deposit of the Bank of Burrton to Henry P. Ayers, dated June 1, 1893, due June 1, 1894, with seven per cent. interest.

"No. 1603.—A $1000 certificate of deposit of the Bank of Burrton to Henry P. Ayers, dated June 1, 1893, due June 1, 1894, with seven per cent. interest.

"No. 1625.—A $3000 certificate of deposit of the Bank of Burrton to Henry P. Ayers, dated August 30, 1893, due September 1, 1894, with eight per cent. interest from September 1, 1893.

"No. 1626.—A $3000 certificate of deposit in the Bank of Burrton to Henry P. Ayers, dated August 30, 1894, with eight per cent. interest from September 1, 1893.

"All of which loans are guaranteed by John H. Van Arsdale and others; and whereas, said Van Arsdale, being desirous of having said indebtedness collected from the makers of said notes and certificates, has requested and hereby does request said Pfeiffer to institute suit or suits against the makers aforesaid, or the stockholders, former stockholders, partners or officials or ex-officials of said makers: therefore, we, the said John H. Van Arsdale as principal, and John Wilson as surety, are held and firmly bound unto said Rudolph Pfeiffer, as executor of the last will and testament of Gardner T. Barker, deceased, his heirs, executors, administrators, successors, and assigns, in the penal sum of $20,000, for the payment of which we bind ourselves, our heirs, executors, and administrators, jointly and severally, firmly by these presents.

" The condition of the above obligation is such, that if the said Van Arsdale shall save and keep the said Pfeiffer, his heirs, executors, administrators, successors, and assigns, harmless from any loss or damage, costs, expenses and attorneys' fees incurred or experienced by the institution or prosecution of any and all suits to collect the indebtedness aforesaid, or any part thereof, this obligation shall be null and void; otherwise to be and remain in full force and virtue.

" Given under our hands and seals, this 26th day of January, A. D. 1895. J. H. VAN ARSDALE. JOHN WILSON."

Correspondence was thereafter had between J. H. Van Arsdale and W. O. Van Arsdale and the defendant in error, and on January 21, 1895, J. H. Van Arsdale wrote to Pfeiffer, as follows:

" I returned to Burrton last Saturday, and we held a council at Hutchinson with the interested parties, who are indorsers on the notes and certificates of deposit on the Bank of Burrton, with their attorneys, who are very positive that if you allow them to commence suit in your name to collect the value of Henry P. Ayers's claims that they will (as soon as judgment is obtained) reach Mr. Thompson's property in a way that he will come to time and prorate with the balance of the stockholders of both companies. . . . I hope this will be satisfactory to you, and that you will forward the proper papers to W. O. Van Arsdale at your earliest convenience, authorizing them to proceed to close up these institutions. . . ."

On the next day W. O. Van Arsdale wrote to Pfeiffer a letter which reads:

" Enclosed herewith we hand you note and mortgage signed up by my father, to secure you in the indebtedness of the Bank of Burrton *et al.* On receipt of this I wish you would send to Rose & Roberts, Hutchinson, Kan., whose card I enclose you herewith, the several certificates of the Bank of Burrton and the $2000 note of the Burrton Land and Town Company, with instructions to bring suit on same. Also, please send them a copy — or two copies, it should be — of your appointment of executor of the estate of Henry P. Ayers, signed by the court making the appointment. We wish a copy of this appointment to file in each case. . . . Please send the papers in as soon as possible, as they wish to get it in the next term of court. Yours very truly, W. O. VAN ARSDALE, *President.*"

The amount of the deposit as security for costs and other expenses incident to the beginning of the suit in the district court was furnished by W. O. Van Arsdale out of funds he had collected on certain notes due from the Crescent Mill and Elevator Company to the Bank of Burrton.   These amounts were charged to Henry P. Ayers after his death.   Said Van Arsdale testified that he had theretofore collected interest on this note, which was credited on the books of the bank to Henry P. Ayers.   He was also present at a conference had between the attorneys for Pfeiffer and J. H. Van Arsdale.

This action was commenced January 16, 1895, by the defendant in error against the Bank of Burrton, and service obtained upon W. O. Van Arsdale, its president.   The summons in the cause was in due form, except that on the face thereof were the following words and figures :  '' Suit brought for the recovery of money.   Amount claimed, $2000, with seven per cent. interest from June 1, 1893.   For $4000, with interest at seven per cent. per annum from July 1, 1893.   And for $6000, with interest at eight per cent. per annum from August 30, 1893, and for costs of this action.'' Thereafter, and on June 3, 1895, judgment was rendered in favor of said Rudolph Pfeiffer, executor, against the Bank of Burrton for the sum of $13,659. On the 13th day of January, 1896, a general execution was issued thereon, which was returned by the sheriff, ''no property found.''   While the same was in the sheriff's hands he inquired of W. O. Van Arsdale if he knew of any property belonging to the Bank of Burrton, who answered that he knew of no property belonging to said bank.   It seems that at this time the bank owned about eleven acres of land, of little value.

Thereafter, and on January 16, 1896, this action was begun by the defendant in error against E. V. Thompson, as a stockholder in the Bank of Burrton, for the recovery of $4500, with interest and costs. The defendant below, Thompson, set up in his answer and the amendment thereto eleven defenses. Those material to the case are referred to in the opinion. A jury was waived, and judgment rendered by the court against the defendant below for $4500 and interest.

*H. Whiteside, Samuel Jones*, and *C. F. Foley*, for plaintiff in error.

*J. W. Rose, J. W. Roberts*, and *Peters & Nicholson*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : It is claimed that the evidence does not support the judgment. There were no conclusions of fact made by the trial court. The principal ground of error assigned is that service of summons on W. O. Van Arsdale, the president of the Bank of Burrton, conferred no jurisdiction on the court to render a judgment against the bank at the suit of the defendant in error to recover upon the defaulted certificates of deposit. This contention is based upon the claim that W. O. Van Arsdale was the agent of Rudolph Pfeiffer, the plaintiff below, and was '' vitally interested in the recovery of the judgment.'' We cannot say that the evidence does not support the conclusion of the trial court.

J. H. Van Arsdale was not a stockholder in the bank, and never had been, and his only connection therewith was that of an indorser on the certificates of deposit. When his land in Illinois was attached to enforce payment from him of these certificates, it

was but natural that he should make prominent the fact of his secondary liability and his status as a surety, and that he should at once endeavor to induce the holder of the certificates to exhaust his remedy against the bank and its stockholders before compelling him as indorser to pay the amount. There was an obligation, both legal and moral, resting upon the bank and its stockholders to pay these debts, and not permit the surety, who was a mere accommodation indorser, to suffer.  The bond of indemnity made on the 25th day of January, 1895, set out in the statement of this case, shows no unnatural course taken on the part of J. H. Van Arsdale, but an act to which any surety would have had a right to resort.  The Van Arsdales suggested to Pfeiffer the names of attorneys to be employed in the cause, and they were retained.  We cannot see that W. O. Van Arsdale was so far the agent of Rudolph Pfeiffer, the plaintiff below, in the prosecution of the suit as to render service upon the former as president of the bank void or even voidable.

The debt was a just one.  Its consideration seems not to have been attacked seriously.  The proceeds of the money obtained from Gardner T. Barker through Henry P. Ayers, his agent, went to pay off an indebtedness due from the bank to relatives of the plaintiff in error, Thompson ; and the judgment against the bank, obtained on June 3, 1895, for $13,659, was for renewals of the certificates originally given when the money was borrowed by the bank from Barker for that purpose.  There is no suggestion of fraud or lack of consideration in the origin of the indebtedness.  It was recognized as valid by everybody connected with the bank.  The fact that W. O. Van Arsdale advanced money to pay costs and expenses of Pfeiffer's suit out

27—60 KAN.

of funds belonging to the bank, charging the amount to Henry P. Ayers, did not show that he was the agent for the plaintiff below, Pfeiffer. This money was advanced at the request of his father.

In the case of *Bank v. Milling Co.*, 59 Kan. 654, 54 Pac. 681, one Warkentin was a stockholder in both the Sedgwick Milling and Elevator Company and the Newton Milling and Elevator Company, corporations. The former was indebted to the latter in the sum of $2480, to recover which suit was brought. A judgment was rendered, and an application made for execution against Warkentin for the payment of a balance due upon his stock subscription to the Sedgwick Milling Company and also upon his statutory liability. Thereupon he paid over the amount of his liability as a stockholder to the Newton Milling and Elevator Company. The judgment against the Sedgwick Milling and Elevator Company was based upon service which Warkentin accepted in his capacity as vice-president for that company. He was also general manager of the Newton milling company at the time, and a director in both corporations. In passing upon the validity of the judgment, Chief Justice Doster said :

"In view of the fiduciary relationship of Warkentin to the two companies, counsel for plaintiff in error cites the familiar doctrine that officers common to two corporations may not act in the interests of one as against the other. This doctrine has no applicability. Warkentin did nothing for his own company to the prejudice of the other. What he did was to the prejudice of some of the creditors of the Sedgwick company, but not to the prejudice of the company itself. He simply used his position as an officer of that company to secure an advantage to another company of which he was also an officer ; not as against the one company, but as against some of its creditors. It could

not be material to the Sedgwick company that War-
kentin paid the amount of his liability as a stockholder
to one creditor or another. He, as a debtor, chose to
pay one as against others, and to that end used his
power as an officer."

In the case at bar we can find no fraud in the acts
of W. O. Van Arsdale connected with the rendition of
the judgment of Pfeiffer, executor, against the Bank
of Burrton. Whatever W. O. Van Arsdale did, show-
ing any interest, was chiefly as the representative of
his father. But we cannot say that J. H. Van Ars-
dale was the agent of Pfeiffer. He was interested of
course in protecting himself from liability as a surety,
but we cannot conclude from the evidence, in opposi-
tion to the general finding made by the court below,
that either he or his son was the agent of the defend-
ant in error. It is only in cases where the officer of
the corporation upon whom service is had is pecuni-
arily interested in the claim sued on, or when he acts
as agent or attorney in fact for the person suing, that
service upon the officer is adjudged to be void. The
trial judge, who heard all the evidence, found that W.
O. Van Arsdale did not, as charged, assume a ques-
tionable position in his relation to the suit; and
while some of his acts might savor of hostility to the
company whose chief office he held, and his zeal to
promote his father's interests might have impelled
him to unusual activity in carrying out his wish that
Thompson might be forced, as a stockholder, to pay,
yet all inferences being in favor of the judgment be-
low, to disturb it would be violative of a well-estab-
lished rule forbidding this court to review disputed
questions of fact.

In the case of *George v. American Ginning Co.*, 46
S. C. 1, 24 S. E. 41, cited by plaintiff in error, it dis-

tinctly appeared that one Brown was acting as attorney in fact for the plaintiff in the suit, and had summons served on himself as treasurer of the corporation. The court said that Brown was *pro hac vice* the plaintiff. He commenced the action under a power of attorney from George, being fully authorized to prosecute an action and attach the property of the defendant. Also in *Buck v. Manufacturing Co.*, 4 Allen, 357, Buck was plaintiff in the 'action and caused a summons to be served on himself as president of the corporation. The judgment founded thereon was held void. These authorities are not applicable to the case at bar. Here it was an issue whether the Van Arsdales were agents of the defendant in error, Pfeiffer, and this issue, after the hearing of much evidence, was decided against the plaintiff in error at the trial. If the judgment against the Bank of Burrton was not void for fraud, then it was conclusive against the stockholders. ( *Ball v. Reese*, 58 Kan. 614, 50 Pac. 875. ) The plaintiff in error, with great persistence, urges us to review the evidence and to reach a different conclusion from that reached by the district court. In *Beaubien v. Hindman*, 37 Kan. 227, 15 Pac. 184, it is said :

" It has always been held by this court that a finding of fact by the court is equivalent to a verdict by a jury ; and, further, that this court will not disturb the finding if there is sufficient evidence to justify it ; and this is the case, although the finding of the court be contrary to the judgment of the appellate court. ( *Ruth v. Ford*, 9 Kan. 17 ; *Walker v. Eagle Works Manufg. Co.*, 8 id. 397 ; *K. P. Rly. Co. v. Kunkel*, 17 id. 145 ; *Beal v. Codding*, 32 id. 107, 4 Pac. 180.) "

The plaintiff in error insists that the summons in the suit against the Bank of Burrton was void, and that the district court obtained no jurisdiction to ren-

der the judgment, for the reason that the require-
ments of section 54, chapter 95, General Statutes of
1897, were not observed. This section reads:

"  .  .  . Where the action is on contract for the
recovery of money only, there shall be indorsed on the
writ the amount for which, with interest, judgment
will be taken if the defendant fail to answer. If the
defendant fail to appear, judgment shall not be ren-
dered for a larger amount and the costs." (Gen. Stat.
1889, ¶ 4138.)

The amount for which judgment would be taken in
case the defendant failed to appear was stated on the
face of the summons and at the bottom thereof. The
only complaint is that it was not indorsed on the
back. The argument against the validity of the proc-
ess is wholly without merit. The purpose of the
statute is to require notice to be given the defendant
of the amount for which judgment will be taken if he
fail to appear. The paper served contained this
notice. The information as to the amount for which
suit was brought was in fact more conspicuous on the
face than on the back of the summons, and more
likely to be read by the person served. A person
may be an indorser of a promissory note who signs
his name on the face of the paper. (Story, Notes,
§ 121; Chitty, Bills, 141; *Richards v. Warring*, 39
Barb. 45; *Powell v. Commonwealth*, 11 Gratt. 830.)

Again, we can see no merit in the fourth assign-
ment of error, to the effect that no *bona fide* effort was
made by the sheriff while the execution was in his
hands to find property of the bank upon which to levy
the same. His return is entitled to that credit due to
the acts of a sworn officer. The bank was evidently
insolvent. It could not pay its debts. The return on
the execution, "no property found," was sufficient
under the statute. In *Hoyt v. Bunker*, 50 Kan. 574,

32 Pac. 126, it is held that when the record of the judgment against the corporation shows an execution returned *nulla bona*, indicating that the çorporate property has been exhausted, an execution may then be ordered against the stockholders. (*Sleeper v. Norris*, 59 Kan. 555, 53 Pac. 757.) This question has been passed upon by other states having statutes substantially like ours. In *Baines v. Babcock*, 95 Cal. 581, 27 Pac. 674, and 30 Pac. 776, it is said :

"The return of the execution issued upon the judgment as unsatisfied is conclusive, in the equitable action against the stockholders, that the creditor has exhausted his legal remedy upon the judgment ; and evidence offered by the defendants for the purpose of showing that the corporation was the owner and in the possession of a large amount of property, which might have been levied upon is properly rejected by the trial court."

*Bagley v. Tyler*, 43 Mo. App. 195, was a suit against a Missouri stockholder in a Kansas corporation. Speaking of our statute, the court said :

"The words of the statute are, 'if any execution shall have been issued' against the corporation and no property found, then the contingency has arisen whereby the stockholder may be charged. It is not, surely, required that the creditor, before resorting to the stockholders' liability, should take a roving execution and go about the country, wherever the corporation may have had business, and should, too, go into the courts of other states and secure judgment against the corporation, with executions in all, and returns of 'no property found.' The stockholder contracted in view of this law, and he agreed that if a judgment should be rendered against the corporation, and an execution returned thereon of 'no property found,' then he would pay the debt to the extent of this double liability."

In *Jones v. Green*, 1 Wall. 330, this language is used :

"The execution shows that the remedy afforded at law has been pursued, and, of course, is the highest evidence of the fact.   The return shows whether the remedy has proved effectual or not, and from the embarrassments which would attend any other rule, the return is held conclusive.   The court will not entertain inquiries as to the diligence of the officer in endeavoring to find property on which to levy."

In the absence of fraud on the part of the sheriff, we think that the truth of a return of "no property found" on an execution cannot be contested in an action brought to charge a stockholder of a corporation with the statutory liability.

The contention of plaintiff in error that the plaintiff below was mistaken in his remedy cannot be considered.   The position taken · is that the corporation having ceased to do business since March, 1893, no judgment after that could be obtained against it, so that the only remedy of a creditor seeking to charge a stockholder was to sue him directly, under section 45, of chapter 66, General Statutes of 1897 (Gen. Stat. 1889, ¶ 1200).   The question raised was set at rest by this court in *Sleeper v. Norris*, 59 Kan. 555, 53 Pac. 757.   The precise point was there decided against the position taken by the plaintiff in error.

We have examined into the application of the defendant below for a continuance, and cannot see how he was prejudiced by its refusal.   He seems to have been able to get before the court all that was material of the records of the bank, and sufficient of W. O. Van Arsdale's correspondence to show his relations to Pfeiffer and to his father in this matter.   Thompson, the plaintiff in error, is in no worse situation than any other stockholder.   If he pays more than his

share of the debts of the bank, he can compel contribution from his associates.

We think the case was fairly and carefully tried in the court below, and its judgment will be affirmed.