THE SALINA NATIONAL BANK v. MARY E. L. PRESCOTT *et al.* .

No. 11157.

1. PLEADING AND PRACTICE—*Voluntary Appearance.* Section 67 of the code (Gen. Stat. 1889, ¶ 4146, Gen. Stat. 1897, ch. 95, § 64) provides that "an acknowledgment on the back of the summons or the voluntary appearance of a defendant is equivalent to service." *Held*, that a voluntary appearance is made by the defendant signing a paper, entitled in the cause, waiving service of summons and entering an appearance in the action, whether the same is filed with the petition, or afterward, in term time or vacation.

2. ——— *Case Disapproved.* The case of *Bradley v. Harwi*, 2 Kan. App. 272, 42 Pac. 411, disapproved.

3. CORPORATIONS— *Common Directors and Officers.* The fact that two corporations may have common directors or officers does not render a contract between them invalid where no fraud is found, and in such case an action may be commenced by one against the other and prosecuted to judgment, and all remedies employed to collect the same as in other cases.

4. ——— *Cases Followed.* The cases of *Sleeper v. Norris*, 59 Kan. 555, 53 Pac. 757, and *Thompson v. Pfeiffer*, ante, p. 409, 56 Pac. 763, followed.

Error from court of appeals, northern department, JOHN H. MAHAN, ABIJAH WELLS, and SAM'L W. MC-ELROY, judges. Opinion filed May 6, 1899. Reversed.

*Bond & Osborn,* and *Garver & Larimer,* for plaintiff in error.

*John D. Milliken,* and *David Ritchie,* for defendants in error.

The opinion of the court was delivered by

SMITH, J. : A judgment was rendered in the district court in favor of the Salina National Bank against the Lone Star Plaster Company, a corporation, for $3127.08. Two executions were issued and returned "no property found." A motion was filed for execution against Mary E. L. Prescott, E. W. Dow, and J. E. Miller, stockholders, alleging that they held 113, 52 and 5 shares, respectively, of the capital stock, of the par value of $100 each. The stockholders moved against first appeared specially and attacked the judgment rendered against the corporation for the reason that the court rendering the same had acquired no jurisdiction for want of proper service. It appeared that the president of the Lone Star Plaster Company made a voluntary appearance by filing with the clerk

of the court a writing which, omitting title of the cause, was as follows :

" The issuance and service of a summons in the above-entitled action is hereby waived, and the said defendant, the Lone Star Plaster Company, hereby enters its voluntary appearance in said action.

THE LONE STAR PLASTER COMPANY.

By J. F. MERRILL, *President.*"

This was filed in vacation, accompanied by the petition in the cause against the company. Defendants in error contend that the judgment based on this service is void for the following reasons : (1) That the entry of appearance conferred no jurisdiction; (2) that the president of the plaster company had no power to waive the issuing of summons. The case of *Bradley v. Harwi*, 2 Kan. App. 272, 42 Pac. 411, is cited as conclusive on the first proposition. We do not concur in the rule of that case. When the entry of appearance in the case at bar was filed in court it became at once operative. It can make no difference whether the court was in session or not. A suit was anticipated and the title of the action about to be commenced was mentioned in the paper signed by the defendant. We think it is competent for parties out of court, in anticipation of a suit to be brought, to waive the issuance and service of summons and enter appearance in the cause. The code provides : "An acknowledgment on the back of the summons or the voluntary appearance of a defendant is equivalent to service." (Gen. Stat. 1897, ch. 95, § 64 ; Gen. Stat. 1889, ¶ 4146.) We do not interpret the words "voluntary appearance of a defendant" to mean an appearance in court in term time, personally or by attorney. It has been the uniform custom, both in the district courts and this court, for defendants to waive in writing the issuing and service of summons

and enter their appearance in cases about to be commenced.

It would be overturning a long-continued course of practice to hold that the courts obtain no jurisdiction where appearance is entered in this way. In the case of *Freelove v. Gould*, 3 Kan. App. 750, 45 Pac. 454, in discussing whether the filing of a written motion for a new trial within three days after a decision was the making of an application for a new trial, within section 308 of the code (Gen. Stat. 1897, ch. 95, § 318, Gen. Stat. 1889, ¶ 4403), that court used the following pertinent language :

"This construction of the statute has, also, been universally acquiesced in and acted upon by the courts and by the bar of the state, and has become a rule of practice as thoroughly established as if directed by the very letter of the law. The change of construction contended for would not only revolutionize the practice, but would inevitably result in the doing of a grievous wrong to litigants who have acted in reliance upon the established rule. The doctrine of *stare decisis* is peculiarly applicable under such circumstances, and forbids any innovation at this time."

There could be no question that if the defendant had filed a motion in the cause, either simultaneously with the filing of the petition or afterward, on any other than jurisdictional grounds, his appearance would have been effectually entered in the case. (*Burdette v. Corgan*, 26 Kan. 102 ; *Packing and Provision Co. v. Casing Co.*, 34 id. 340, 344, 8 Pac. 403 ; *Life Association v. Lemke*, 40 id. 142, 19 Pac. 337.)

In the case of *Humphries v. Humphries*, Morris (Iowa), 473, the defendant indorsed on the complaint these words : "I hereby waive service of process on the within and agree to enter an appearance the first term

of the district court for the county of Muscatine.''
The court held :

"By this indorsement the defendant Humphries
not only waived service but agreed to make his ap-
pearance to answer at the next term of the court for
Muscatine county, thus by his own act obviating the
necessity of issuing a summons in accordance with the
precipe filed, thereby amicably placing himself in the
position of a defendant in the action who had been
fully and legally notified by summons.'' ( See also
*Russell v. Craig*, 10 Colo. App. 428, 51 Pac. 1017.)

Cases to the contrary of this doctrine have been
cited by the defendant in error, but we think the bet-
ter rule is that stated above, which has been uniformly
practiced and acquiesced in by the bench and bar of
the state for many years.   In Bouvier's Law Diction-
ary, 518, under the title ''Appearance '' it is said :

"The appearance of the parties is no longer ( as
formerly) by actual appearance in court, either by
themselves or their attorneys, but it must be remem-
bered an appearance of this kind is still supposed and
exists in contemplation of law.   The appearance is
effected on the part of the defendant ( where he is not
arrested ) by making certain formal entries in the
proper office of the court expressing his appearance.''

The paper signed by the plaster company was, with-
in the meaning of the statute, '' the voluntary appear-
ance of a defendant,'' as effective in all respects as if
a formal pleading had been filed in the cause.   The
intention of the defendant company was apparent
from the terms used in the entry of appearance, and
we can see no good reason for defeating the object
sought to be accomplished.

On the second proposition, the president of the plas-
ter company was the proper person to be served with
summons in the cause. (Gen. Stat. 1897, ch. 95, § 65 ;
Gen. Stat. 1889, ¶ 4147.)   A waiver of service of sum-

mons and the entry of appearance was a substitute for actual service and was binding on the corporation. (*City of North Lawrence v. Hoysradt*, 6 Kan. 170.) Defendants in error contend that the case last cited is not in point, because it construed a provision of the justices' code which is broader than section 67 above quoted. In our view both provisions are equally comprehensive.

It appeared from the evidence that some of the stockholders were released by the bank from their statutory liability as such by the payment of nominal sums, and it is claimed that the aggregate liability of such stockholders was more than the amount of the judgment rendered in favor of the bank against the plaster company, and that for these reasons we must consider the judgment paid. In one instance, that of J. J. Crippen and wife, a liability of about $3000 was released in consideration of the payment of $75. The argument is that this affected the rights of the defendants in error to compel contribution from other stockholders. This court has held, in *Abbey v. Long*, 44 Kan. 688, 24 Pac. 1111, that a stockholder cannot purchase claims against the corporation at a discount and then set them off against his liability at their face value. He can only get the benefit of the amount actually paid by him for such claims. The total debt and liability of the stockholder is not paid by the acceptance of a less amount than that for which the stockholder is actually liable. This, however, is not an action by one stockholder against another for contribution, and we are without power to adjudicate upon the rights of stockholders not brought into this court. It would be mere *dictum* to state a rule determining the proportion that other stockholders should pay to defendants in error by way of contribu-

tion, for the reason that no such controversy is involved here. The judgment creditor has the right to pursue one stockholder alone and compel payment from him of his statutory liability, and he cannot complain that his associates are not brought in and likewise charged; and one stockholder is not concerned with the question whether other subscribers are discharged or not unless his liability be thereby increased. (*Bennett v. Glenn*, 8 U. S. App. 419, 5 C. C. A. 353.)

The contention that the proceeding adopted by the plaintiff in error in the court below was not available, for the reason that the corporation had ceased to do business for more than a year before the same was begun, is not well founded. (*Sleeper v. Norris*, 59 Kan. 555, 53 Pac. 757; *Thompson v. Pfeiffer*, ante, p. 409, 56 Pac. 763.) Connected with this contention is the claim that the note of the Lone Star Plaster Company to the bank was dated October 1, 1894, after the plaster company had ceased to do business for more than a year, and hence that no debt could be created which the stockholders ought to pay after the corporation had ceased to exist as to them. It appears that this note was a renewal of a former one. In *Sleeper v. Norris*, supra, Mr. Justice Johnston, speaking for the court, said:

"The provision of section 45, however, was not intended to extinguish the franchises or destroy the life of the corporation for all purposes. The cessation of business does not operate as a legal or complete dissolution of the corporation, but it is deemed to be dissolved but for a single purpose, that of enabling creditors to enforce the individual liability of stockholders. For all other purposes the bank continued to be a corporation in the eye of the law, and creditors had a right to sue the bank in its corporate capacity."

Its suspension of business for more than a year did not render the directors or officers of the corporation powerless to act in matters concerning the payment of its debts and making evidence of the same by the execution of notes.

The claim that an extension of the time of payment of the note by the bank when it took the renewal obligation released the stockholder from his statutory liability on a judgment for that debt is not tenable. We are not satisfied that the stockholders stand in such relation to the corporation as to entitle them to that favor and strict construction of their contracts which is accorded to sureties. In any event, the mere extension of the time of payment will not discharge a surety. There must be a valuable consideration paid. (*Jenness v. Cutler*, 12 Kan. 500, and cases cited therein.)

Defendants in error contend that the corporation has assets subject to execution. This we cannot consider in contradiction of the return of the execution *nulla bona*. In *Thompson v. Pfeiffer*, supra, it is said : "In the absence of fraud on the part of the sheriff we think that the truth of the return 'no property found' on an execution cannot be contested in an action brought to charge a stockholder of a corporation with the statutory liability."

The fact that the plaster company and the bank may have had common officers or directors cannot affect the right of one corporation to sue the other to recover a *bona fide* indebtedness. They had authority to contract with each other, and in the absence of fraud such contracts were binding. (*Barr v. N. Y. L. E. & W. R. R. Co.*, 125 N. Y. 263, 26 N. E. 145 ; *Manufacturers Sav. B. v. Big Muddy Iron Co.*, 97 Mo. 38, 10

S. W. 865 ; *San Diego v. Pacific Beach Co.*, 112 Cal. 53, 44 Pac. 333.) In the case last cited it is held :

"The mere fact that two contracting corporations have common directors does not render the contract between the corporations invalid or incapable of ratification, where there is no actual fraud alleged or found, and where the contract is within the chartered powers of both corporations."

In *Leavenworth v. Chicago &c. R. R. Co.*, 134 U. S. 688, 707, 10 Sup. Ct. 715, it is said :

"Notwithstanding this commingling of officers, the corporations were distinct corporations. They had a right to make contracts with each other in their own corporate capacities, and they could sue and be sued by each other in regard to these contracts ; and the question is not, Could they do these things? but, Have the relations of the parties—the trust relations, if indeed such existed—been abused, to the serious injury of the Southwestern company ?"

In *Coe v. E. & W. Rld. Co.*, 52 Fed. 531, 543, it is said :

"That the East & West Railroad Company could lawfully contract with the Cherokee Iron Works, although all the stockholders of the one were also stockholders of the other, in the absence of fraud and misrepresentation, is indisputable ; nor would the fact that the two corporations had substantially the same directors, who were the active agents negotiating the contract, render it void—at worst only voidable, but subject to ratification.

The court below permitted the widest inquiry touching the good faith and consideration of the indebtedness of the plaster company to the bank, and we can discover nothing of a fraudulent nature concerning it either in its inception or in the efforts made by the bank towards its collection. We have examined into other questions discussed in the brief of the defendants

in error, but fail to find where they have been prejudiced by the rulings of the trial court.

The judgment of the court of appeals will be reversed, and the judgment of the district court affirmed.