[Civil No. 1464. Filed November 17, 1915.]

[152 Pac. 853.]

GOULD COPPER MINING COMPANY, a Corporation, Appellant, v. CHARLES E. WALKER, HENRY W. ZIPF, and F. A. DICKSON, as Trustees in Bankruptcy of THE PIONEER SMELTING COMPANY, a Corporation, Appellees.

1. CORPORATIONS — INTERLOCKING DIRECTORATE — RATIFICATION OF CONTRACTS.—A smelting company contracted with a mining company to make advances to it, to be paid by the mining company out of the first net proceeds of the ores of the mining company treated by the smelting company. Thereafter, at a time when two of the smelting company's directors were directors of the mining company, which had five directors, and when the board of directors of the mining company were under the control of the directors of the smelting company, the mining company gave a note for the ad-

vances, which was afterward renewed and secured by a mortgage. There was no intimation that the smelting company's control of the mining company's board of directors was obtained by undue, unfair or fraudulent means, and when the renewal note was given, none of the directors of the smelting company were directors of the mining company. *Held*, that the renewal of the original indebtedness by a board of directors entirely disconnected with the smelting company was a ratification of the indebtedness, especially in the absence of any showing that such board was not in full possession of all the facts and circumstances surrounding the original transaction, as contracts which are merely voidable, because contrary to good conscience or equity, may be ratified and thus established.

2. CORPORATIONS—INTERLOCKING DIRECTORATE—VALIDITY OF CONTRACTS. Corporations having the same directors may make contracts with each other; and, when they are entirely honest and fair, the courts will enforce them.

APPEAL from a judgment of the Superior Court of the County of Pima. Wm. F. Cooper, Judge. Affirmed.

Mr. Tom K. Richey, for Appellant.

Mr. S. L. Kingan, for Appellees.

ROSS, C. J.—This action was originally instituted by the Pioneer Smelting Company against the defendant appellant, to recover on a note for $31,239, dated December 20, 1912, and to foreclose a mortgage on some mining claims of defendant's given as security to said note. Thereafter the Pioneer Smelting Company was declared a bankrupt, and the plaintiffs herein were appointed its trustees in bankruptcy and, as such, were substituted as plaintiffs in the action. The note provided that interest at 6 per cent should be paid one year from date and semi-annually thereafter. The mortgage was conditioned that the appellant should do the annual assessment work upon the mortgaged mining claims on or before November 1, 1913, and file an affidavit of such assessment work with the county recorder of Pima county on or before that date, and a failure to do so on its part, or to pay the interest as stipulated and when due, it was agreed, should mature the note and mortgage and the whole thereof, and authorize suit or other proceedings for the recovery of the principal and interest thereon, together with attorney's fees

and other expenses incurred by the Pioneer Smelting Company in the protection of said property. The mortgage is incorporated in the complaint, and it is alleged that the conditions of the mortgage were broken; that the Pioneer Smelting Company, to protect said mining claims, was compelled to do the assessment work for the year 1913 at an expense of $2,500; that no part of the note had been paid; and that the same, together with the amount advanced for assessment work on the property, was due and owing from the appellant.

The appellant in its answer admitted the execution of the note and mortgage, but in defense alleged that on December 10, 1909, the Pioneer Smelting Company and appellant entered into a contract, by the terms of which the Pioneer Smelting Company agreed to erect a copper matte smelting plant with capacity of 150 tons of ore per day, and agreed to pay or to secure the extension of a $15,000 indebtedness of the said appellant and to advance to the appellant the sum of $10,000 in three equal monthly payments, commencing February 15, 1910, to be expended in necessary repairs and preparations in, upon and about the mines and property, in order to fit it for the resumption of mining thereon and the production of ore. In case the $10,000 agreed to be advanced should be found to be insufficient to prepare the mines and property so that the ores could be mined and delivered to the Pioneer Smelting Company in an amount of at least 100 tons per day, the smelting company was to advance a further sum, not to exceed $5,000, to be used in preparing said mines for production of ore. The advances to be made by the smelting company to the appellant were to be repaid out of "the first net proceeds of the ores of the said Gould Copper Mining Company which should be treated by the said Pioneer Smelting Company."

It is admitted in the answer that approximately $28,000 was advanced by the smelting company to the appellant under this agreement; the allegation of the answer in that respect being as follows:

"That among the provisions of said option it was provided that plaintiff [the smelting company] should furnish to defendant certain sums of money to pay off the indebtedness of defendant and to make necessary repairs and preparations in, upon and about the property of defendant, requisite to

the resumption of mining thereon and the production of ore from said mines, and providing that out of the first net proceeds of the ores of the said defendant, which should be treated by the said plaintiff, the said plaintiff [the smelting company] should be repaid all amounts advanced to said defendant, together with interest thereon; that plaintiff [the smelting company] advanced under said option approximately $28,000 to said defendant, and failed and neglected to provide any other or further sum of money to be so expended in putting said mines in condition to ship ore, as provided in said option.''

It is alleged in the answer that the smelting company, by means of directors and stockholders common to it and the appellant, on or about the twenty-ninth day of May, 1911, obtained control of the appellant and its affairs, "and in fraud of said defendant and its stockholders and in violation of the trust imposed upon them" caused the defendant's board of directors to pass a resolution authorizing the defendant to execute its note to the smelting company for the sum of $27,660.23, with interest at the rate of 8 per cent per annum from date, and that thereafter the said defendant appellant delivered to the smelting company its note for said sum. It is alleged that this note was without consideration, "and in fraud of the defendant above named and its stockholders, and in violation of the trust imposed upon said board of directors of defendant," and in any event that whatever moneys were advanced by the smelting company were to be paid "in but one manner, and that alone, to wit, . . . out of the first net proceeds of the ores of the said Gould Copper Mining Company which shall be treated by the said Pioneer Smelting Company. . . . ''

It is further alleged that the note dated December 20, 1912, was a renewal note for the previous one, and therefore subject to the same defenses. The case was tried to a jury. A great many questions were propounded to the jury, most of them immaterial, as it seems to us, because based upon no controverted question of fact. According to the pleadings, as we analyze them, the answer practically admits every material allegation of the complaint, the contention being that because the board of directors of the smelting company constituted a part of the board of directors of the appellant and controlled

the appellant, the note and mortgage sued on were vitiated for fraud. That seems to be the only question in the case. The jury found that the board of directors of the appellant company were under the control of the board of directors of the smelting company at the time the note of May 29, 1911, was given, and that the note sued on was a renewal of the previous note. It also found that at the time the note and mortgage sued on were given to the smelting company there was no interlocking directorate, but that the officers and directors of the appellant had no interest in the smelting company, or at least were not officers or directors thereof.

Each of the companies had five directors, and two of the directors of the smelting company were also directors of the appellant on the twenty-ninth day of May, 1911, when the first note was made by the appellant. The appellant does not allege or set forth any act or conduct of bad faith or unfair or unconscionable dealings on the part of the smelting company and its officers, but relies solely upon the facts that the board of directors of the two companies, during the time of their dealing with each other, were in part the same, notwithstanding the contract of December 10, 1909, pleaded by the defendant in its answer, expressly provided that the Pioneer Smelting Company should have representation upon the board of directors of the appellant. While it is alleged in the answer that the smelting company secured control of the board of directors of the appellant company, there is no hint or intimation, in pleadings or findings, that such control was obtained by undue or unfair or fraudulent means. There is no denial that the smelting company advanced the money represented by the note, or pretense that the appellant had kept and performed the conditions of the note and mortgage by paying interest when due, or by doing the annual assessment work, as agreed.

It was found by the jury that the reason five thousand additional dollars were not advanced by the smelting company to the appellant was because that amount of money would have been insufficient to place the mines of appellant in condition to deliver 100 tons of ore per day, as it had agreed, and that the board of directors of the appellant had refused to demand the advancement of such sum from the smelting

company; also that no part of the money advanced to the appellant had been repaid.

The law as applied to the facts of this case, as admitted in the pleadings and as found by the jury, does not necessarily invalidate the note and mortgage sued upon. Corporations having the same directors may make contracts with each other, and when entirely honest and fair, the courts will enforce them. Thompson, in his valuable work on Corporations, second edition, section 1241, says:

"A contract between two corporations is not rendered void by the mere fact that some of the persons assisting in making the contract and taking a part in the performance of conditions and in the acceptance of performance were directors in both corporations, and represented both to the extent of their respective powers. The identity of the officers does not of itself invalidate the dealings between the two corporations. In one case it was said that 'a contract between two corporations having common directors, made by their respective boards, or between a corporation and an individual director or a firm of which he is a member, is at common law perfectly valid.' In California the rule was stated that: 'Where two corporations, through their boards of directors, make a contract with each other, the directors who are common to both are not within the rigid rule of the cases which hold that one who acts in a fiduciary capacity cannot deal with himself in his individual capacity, and that any contract thus made will be declared void, without any examination into its fairness, or the benefit derived from it to the *cestui que trust.* Two corporations have the right, within the scope of their chartered powers, to deal with each other; and this right is certainly not destroyed or paralyzed by the fact that some, or a majority, of the directors are common to both.' "

7 R. C. L. states the rule as follows:

"444. Notwithstanding the fact that two corporations have officers in common, they still are separate and distinct corporations, and have the right to make contracts with each other through such officers, and may sue and be sued by each other in regard to such contracts; and in such a case there is no presumption that the common officers have dealt unfairly with either corporation."

XVII Ariz.—22

See, also, Cook on Corporations, 5th ed., sec. 658; *Smith*
v. *Chase et al.* (D. C.), 197 Fed. 471; *Coe* v. *East & West R.
Co.* (C. C.), 52 Fed. 531; *Union P. R. Co.* v. *Credit Mobilier,*
135 Mass. 357; *Pauly* v. *Pauly,* 107 Cal. 8, 48 Am. St. Rep. 98,
40 Pac. 29; *Render* v. *Arkansas,* 196 Fed. 1, 115 C. C. A. 635;
*Salina Bank* v. *Prescott,* 60 Kan. 490, 57 Pac. 121; *Hagers-
town Co.* v. *Keedy,* 91 Md. 430, 46 Atl. 965; *Lagunas Co.* v.
*Lagunas Syndicate,* 2 Ch. 392; *Burden* v. *Burden,* 8 App.
Div. 160, 40 N. Y. Supp. 499; affirmed, 159 N. Y. 287, 54 N. E.
17; 10 Cyc. 818, 819.

At the time the note and mortgage sued upon were exe-
cuted by the appellant none of the directors of the smelting
company were ·directors of the appellant.  The personnel of
the directorate of the debtor company was entirely distinct
from the personnel of the smelting company at that time, and
even though when the original debt was contracted two of the
directors were common to both companies, requiring the closer
scrutiny into the transaction on the part of the court, that
objection had entirely vanished when the last note and mort-
gage were executed.  The objection of an interlocking direc-
torate did not exist at that time, and we can see no reason
why a renewal of the original indebtedness by a board of
directors entirely disconnected with the smelting company
would not be a ratification of the indebtedness, and therefore
binding upon the appellant.  This is especially true in the
absence of any showing that the new board of directors were
not in full possession of all the facts and circumstances sur-
rounding the original transaction.  It is but fair to indulge
the presumption, in the absence of proof to the contrary, that
they were fully advised of the origin and nature of the debt
acknowledged, and that they did so uninfluenced and for the
sole purpose of paying an honest debt.  As was said by this
court in *Kline* v. *Kline,* 14 Ariz. 369, 128 Pac. 805, quoting
from Pomeroy's Equity Jurisprudence:

"Contracts which are merely voidable because contrary to
good conscience or equity may be ratified and thus estab-
lished."   10 Cyc. 821.

Judgment affirmed.

FRANKLIN and CUNNINGHAM, JJ., concur.

On contracts between corporations having common directors or offi-
cers, see note in 33 L. R. A. 788.